**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTTIE PIPPEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | No. 11 cv 8834 |
| | ) | |
| **NBCUNIVERSAL MEDIA, LLC; CBS** | ) | Judge Sharon J. Coleman |
| **INTERACTIVE INC., MINT SOFTWARE** | ) | |
| **INC. wholly owned subsidiary of INTUIT** | ) | Magistrate Judge Young B. Kim |
| **INC., EVOLVE MEDIA CORPORATION,** | ) | |
| **INFOGROUP, INC., INVESTING** | ) | |
| **ANSWERS INC., ARIZONA STATE** | ) | |
| **UNIVERSITY, UNIVERSITY OF TAMPA** | ) | |
| **INC., ONE MONEY DESIGN, and** | ) | |
| **SPORTSREPORT 360** | ) | |
| | ) | |
| **Defendants.** | | |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

NBCUNIVERSAL MEDIA, LLC

    David P. Sanders
    JENNER & BLOCK LLP
    353 North Clark St.
    Chicago, Illinois 60654
    (312) 222-9350

EVOLVE MEDIA CORPORATION

    Brian A. Sher
    Jena M. Valdetero
    BRYAN CAVE LLP
    161 North Clark Street, Suite 4300
    Chicago, Illinois 60601
    (312) 602-5000

CBS INTERACTIVE INC.

    Lee Levine
    Chad R. Bowman
    LEVINE SULLIVAN KOCH &
        SCHULZ, LLP
    1899 L Street, N.W., Suite 200
    Washington, D.C. 20036
    (202) 508-1100

    Brian A. Sher
    Jena M. Valdetero
    BRYAN CAVE LLP
    161 North Clark Street, Suite 4300
    Chicago, Illinois 60601
    (312) 602-5000

INVESTING ANSWERS, INC.

    Ryan B. Jacobson
    SMITH AMUDSEN LLC
    150 North Michigan Avenue
    Chicago, Illinois 60601
    (312) 894-3252

MINT SOFTWARE, INC.

    Rodger R. Cole (pro hac vice)
    Songmee L. Connolly (pro hac vice)

    Sean S. Wikner (pro hac vice)
    FENWICK & WEST LLP
    801 California Street
    Mountain View, California 94041
    (650) 988-8500

    Steven P. Mandell
    Steven L. Barren
    MANDELL MENKES, LLC
    One N. Franklin Street
    Chicago, Illinois 60606
    (312) 251-1000

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION .........................................................................................................................1

FACTUAL BACKGROUND ........................................................................................................3

    A.    Pippen's Celebrity ..............................................................................................3

    B.    Pippen's Well-Publicized Financial Woes and Litigation ......................................4

    C.    Pippen's Complaint Against the Defendants for Covering the
            Long-Running Story of his Financial Problems ........................................................8

ARGUMENT ................................................................................................................................9

I.    COUNT III FAILS TO STATE A DEFAMATION *PER SE* CLAIM ...............................9

    A.    Any Statement That Pippen Was Bankrupt Cannot Sustain a
            Libel *Per Se* Claim Because it Does Not Fit Into Any of the
            *Per Se* Categories .............................................................................................11

    B.    The Challenged Statements Are Not Actionable *Per Se* Under the
            Illinois Innocent Construction Rule ....................................................................15

II.    PIPPEN'S CLAIMS FAIL TO STATE A CLAIM BECAUSE HE HAS NOT AND
      CANNOT ADEQUATELY PLEAD THAT ANY DEFENDANT BREACHED THE
      APPLICABLE STANDARD OF CARE ........................................................................17

    A.    Pippen Is a Public Figure as a Matter of Law ......................................................19

    B.    Pippen Has Failed to Satisfy Federal Pleading Standards .....................................21

    C.    Because Any Amendment Would Be Futile, the Complaint Should
            Be Dismissed With Prejudice ...............................................................................23

III.    COUNT I SHOULD BE DISMISSED AS AN IMPERMISSIBLE END-RUN
       AROUND FIRST AMENDMENT PROTECTIONS ......................................................25

IV.    PIPPEN'S FALSE LIGHT CLAIM FAILS AS A MATTER OF LAW ..........................27

    A.    Pippen Fails to Plead Actual Malice as Required of All False
            Light Plaintiffs Under Illinois Law .......................................................................27

    B.    Pippen Fails to Plead Special Damages as Required to Sustain
            his False Light Claim Under Illinois Law ...............................................................27

CONCLUSION ...........................................................................................................................29

i

## TABLE OF AUTHORITIES

**CASES**        **Page(s)**

*Anderson v. Vanden Dorpel*,
    172 Ill. 2d 399, 667 N.E.2d 1296 (1996) ...................................................................10, 15, 28

*Anglin v. Sears, Roebuck and Co.*,
    No. 93 C 3438, 1994 WL 178297 (N.D. Ill. May 9, 1994) ...............................................11, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937 (2009) .........................................................................9, 21, 22

*Bardney v. United States*,
    Nos. 97-1769, 97-1953, 1988 WL 416511 (7th Cir. June 16, 1998) .........................................4

*Barger v. Playboy Enterprises, Inc.*,
    564 F. Supp. 1151 (N.D. Cal. 1983) .......................................................................................22

*Barry Harlem Corp. v. Kraff*,
    273 Ill. App. 3d. 388, 652 N.E.2d 1077 (1995) ......................................................................29

*Bell v. Associated Press*,
    584 F. Supp. 128 (D.D.C. 1984) .......................................................................................19, 20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................................21, 22

*Brewer v. Memphis Publishing Co.*,
    626 F.2d 1238 (5th Cir. 1980) ..........................................................................................19, 20

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) .....................................................................................................9

*Carafano v. Metrosplash.com Inc.*,
    207 F. Supp. 2d 1055 (C.D. Cal. 2002) .............................................................................20-21

*Carrasco v. HSBC Bank USA National Association*,
    No. C-11-2711 EMC, 2011 WL 6012944 (N.D. Cal. Dec. 1, 2011) ......................................21

*Cepeda v. Cowles Magazines & Broadcasting, Inc.*,
    392 F.2d 417 (9th Cir. 1968) ...................................................................................................20

*Chapman v. Journal Concepts, Inc.*,
    528 F. Supp. 2d 1081 (D. Haw. 2007) .....................................................................................20

*Chuy v. Philadelphia Eagles Football Club*,
    595 F.2d 1265 (3d Cir. 1979) ................................................................20

*Cody v. Harris*,
    No. 03-CV-934, 2004 WL 783105 (N.D. Ill. Jan . 22, 2004) ..................................13

*Cody v. Harris*,
    409 F.3d 853 (7th Cir. 2005) ................................................ passim

*Container Manufacturing Inc. v. CIBA-Geigy Corp*,
    870 F. Supp. 1225 (D.N.J. 1994) ............................................................26

*Diario El Pais, S.L. v. Nielson Co. (US), Inc.*,
    No. 07 CV 11295 (HB), 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) .....................21, 23, 24

*Dilworth v. Dudley*,
    75 F.3d 307 (7th Cir. 1996) ................................................................17

*Dongguk University v. Yale University*,
    No. 08-cv-0441 (TLM), 2012 WL 441250 (D. Conn. Feb. 10, 2012) .....................26

*Douglass v. Hustler Magazine, Inc.*,
    769 F.2d 1128 (7th Cir. 1985) ............................................................17, 20

*EEE ZZZ Lay Drain Co. v. Lakeland Ledger Publishing Corp.*,
    No. 1:99CV145-T, 2000 WL 33422618 (W.D.N.C. Feb. 8, 2000) ........................26

*Egiazaryan v. Zalmayev*,
    No. 11 Civ. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ..................23

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
    511 F. Supp. 2d 742 (S.D. Tex. 2005) ....................................................26

*Food Lion, Inc. v. Capital Cities/ABC, Inc.*,
    194 F.3d 505 (4th Cir. 1999) ..............................................................25

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ....................................................................17, 19

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*,
    553 F.3d 527 (7th Cir. 2009) ..............................................................14

*Green v. Rogers*,
    234 Ill. 2d 478, 917 N.E.2d 450 (2009) ................................................ passim

*Hakky v. Washington Post Co.*,
    No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902 (M.D. Fla. June 24, 2010) ...............21

*Hamilton v. Detroit News, Inc.*,
  No. 278989, 2008 WL 3979477 (Mich. App. Aug. 26, 2008)................................................26

*Hanks v. Wavy Broad., LLC*,
  No. 2:11cv439, 2012 WL 405065 (E.D. Va. Feb. 8, 2012)......................................................21

*Harris v. Quadracci*,
  48 F.3d 247 (7th Cir. 1995) ...............................................................................................18, 19

*Harte v. Chicago Council of Lawyers*,
  220 Ill. App. 3d 255, 581 N.E.2d 275 (1st Dist. 1991)............................................................16

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)..................................................................................................................22

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988)..............................................................................................................17, 25

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
  227 Ill. 2d. 381, 882 N.E.2d 1011............................................................................................25

*Independent Trust Corp. v. Stewart Information Services Corp.*,
  665 F.3d 930 (7th Cir. 2012) .........................................................................................4, 23, 24

*Krieger v. Adler, Kaplan & Begy*,
  No. 94 C 7809, 1996 WL 6540 (N.D. Ill. Jan. 5, 1996) ..........................................................27

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) ................................................................................................24

*Lott v. Levitt*,
  469 F. Supp. 2d 575 (N.D. Ill. 2007) ............................................................................10, 15, 16

*Lott v. Levitt*,
  556 F.3d 564 (7th Cir. 2009) ..............................................................................................15, 28

*Lovgren v. Citizens First National Bank of Princeton*,
  126 Ill. 2d 411, 534 N.E.2d 987 (1989)...................................................................................27

*Owen v. Carr*, 113 Ill. 2d 273,
  113 Ill. 2d 273, 497 N.E.2d 1145 (1986)..................................................................................10

*Maag v. Illinois Coalition for Jobs, Growth & Prosperity*,
  368 Ill. App. 3d 844, 858 N.E.2d 967 (5th Dist. 2006) ...........................................................28

*Madison v. Frazier*,
  539 F.3d 646 (7th Cir. 2008) ...........................................................................11, 17, 18, 24

*Maremont v. Susan Fredman Design Group, Ltd.*,
    772 F. Supp. 2d 967 (N.D. Ill. 2011) ................................................................28

*May v. Myers*,
    254 Ill. App. 3d 210, 626 N.E.2d 725 (3d Dist. 1993) ....................................10, 15

*Mayfield v. National Association for Stock Car Auto Racing, Inc.*,
    713 F. Supp. 2d 527 (W.D.N.C. 2010) ...........................................................21, 22

*McFarlane v. Esquire Magazine*,
    74 F.3d 1296 (D.C. Cir. 1996) ............................................................................18

*Milsap v. Journal/Sentinel, Inc.*,
    100 F.3d 1265 (7th Cir. 1996) ........................................................................19, 22

*Mireles v. Infogroup/Opinion Research Corp.*,
    No. 3:11-cv-00503-RCJ-VPC, 2012 WL 78183 (D. Nev. Jan. 10, 2012) ..............26

*Morgenstern v. Fox Television Stations*,
    No. 08-0562, 2008 WL 4792503 (E.D. Pa. Oct. 31, 2008) ...................................26

*Newcombe v. Adolf Coors Co.*,
    157 F. 3d 686 (9th Cir. 1998) ..............................................................................26

*Nicosia v. DeRooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) .................................................................22

*Piersall v. Sportsvision of Chicago*,
    230 Ill. App. 3d 503, 595 N.E.2d 103 (1st Dist. 1992) ........................................20

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ................................................................................4

*Raveling v. HarperCollins Publishers Inc.*,
    No. 04-2963, 2005 WL 900232 (7th Cir. Mar. 4, 2005)........................................27

*Republic Tobacco Co. v. North Atlantic Trading Co.*,
    381 F.3d 717 (7th Cir. 2004) ..............................................................................17

*Rodriguez v. ECRI Shared Services*,
    984 F. Supp. 1363 (D. Kan. 1997) ......................................................................26

*Rosanova v. Playboy Enterprises, Inc.*,
    580 F.2d 859 (5th Cir.1978) ...............................................................................24

*Salamone v.Hollinger International, Inc.*,
    347 Ill. App. 3d 837, 807 N.E.2d 1086 (1st Dist. 2004)...............................15, 28-29

*Sangston v. Ridge Country Club*,
No. 92 C 1981, 1992 WL 317138 (N.D. Ill. Oct. 29, 1992)............................................12, 13

*Schaffer v. Zekman*,
196 Ill. App. 3d 727, 554 N.E.2d 988 (1st Dist. 1990)...........................................28

*Schatz v. Republican State Leadership Committee*,
--- F.3d ----, 2012 WL 414264 (1st Cir. Feb. 10, 2012) .......................................21, 22, 23, 24

*Schultz v. Reader's Digest Association*,
468 F. Supp. 551 (E.D. Mich. 1979)........................................................24

*Seith v. Chicago Sun-Times Inc.*,
371 Ill. App. 3d 124, 861 N.E.2d 1117 (1st Dist. 2007)...................................10, 28

*Smock v. Nolan*,
361 F.3d 367 (7th Cir. 2004) ...........................................................24, 25

*Specht v. Google, Inc.*,
758 F. Supp. 2d 570 (N.D. Ill. 2010) ........................................................4

*Sprewell v. NYP Holdings, Inc.*,
819 N.Y.S.2d 851 (N.Y. 2006), (N.Y. A.D. 2007) ...............................................20

*Springer v. Harwig*,
94 Ill. App. 3d 281, 418 N.E.2d 870 (1st Dist. 1981)...........................................12

*St. Amant v. Thompson*,
390 U.S. 727 (1968)........................................................................18

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ................................................................9

*Thomas v. News World Communications*,
681 F. Supp. 55 (D.D.C. 1988) ............................................................22

*Thoroughbred Legends, LLC v. Walt Disney Co.*,
No. 1:07-CV-1275-BBM, 2008 WL 616253 (N.D. Ga. Feb. 12, 2008)...............................20

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ..............................................................25

*Time, Inc. v. Johnston*,
448 F.2d 378 (4th Cir. 1971) ..............................................................20

*Tuite v. Corbitt*,
224 Ill. 2d 490, 866 N.E.2d 114 (2007)....................................................15, 16

*U.S. National Bank Association v. Air Pip, Inc.*,
   No. 04CC-4235, 2006 WL 4547911 (Mo. Cir. March 24, 2006) .............................................6

*Underwager v. Salter*,
   22 F.3d 730 (7th Cir. 1994) ..........................................................................................18

*Van Vliet v. Cole Taylor Bank*,
   No. 10 CV 3221, 2011 WL 148059 (N.D. Ill. Jan. 18, 2011) ...................................28

*Union Pacific Railroad Co. v. Village of South Barrington*,
   958 F. Supp. 1285 (N.D. Ill. 1997) .......................................................................12, 13

*Waldbaum v. Fairchild Publications, Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ....................................................................................19

*Weber v. Multimedia Entertainment, Inc.*,
   No. 97 Civ. 0682 (JGK), 2000 WL 526726 (S.D.N.Y. May 2, 2000)....................................26

*Zellner v. Herrick*,
   639 F.3d 371 (7th Cir. 2011) .........................................................................................9


**DOCKETED CASES**

*Pippen v. Lunn Partners, LLC*, No. 04 L 02711 (Cook County Ill.) ....................................4, 5, 23


**STATUTES AND RULES**

FED. R. CIV. P. 9(g) ..............................................................................................................28

FED. R. CIV. P. 12(b)(6) .................................................................................................1, 9, 29

FED. R. CIV. P. 15(a) ..........................................................................................................23


**Other Authorities**

1 Robert D. Sack, *Sack on Defamation* § 5:5.2 (4th ed. 2010)...........................................18, 24, 25

1 Robert D. Sack, *Sack on Defamation* § 12:1.2 (4th ed. 2010) ....................................................25

*25 Rich athletes Who Went Broke (10-1)*, BUSINESS PUNDIT (Jan. 1, 2009) ..............................6, 7

Geoffrey C. Arnold, *Players Can Be Easy Money*, OREGONIAN (Feb. 14, 2005) ..........................7

Monica Chen, *Pippen wins more than $2.55M in suit vs. Laettner*,
   DURHAM HERALD SUN (Jan. 21, 2011) .........................................................................6

Patrick Danner, *LITIGATION: Ex-NBA superstar Scottie Pippen sues Sunrise firm; Two Learn.com executives are accused of financial shenanigans by basketball great Scottie Pippen*, MIAMI HERALD (Nov. 22, 2008)...................................................................6

Lisa Donovan, *Pippen: I got bad financial advice; He's looking for a scapegoat, defendant says*, CHI. SUN TIMES (June 9, 2010) .......................................................5

*Emotional Scottie PippenWins $2 Million Lawsuit Verdict*, SPORTS CHANNEL NEWS (June 29, 2010) .......................................................................................................................5

Elliott Harris, *Pippen faces up to TV task*, CHI. SUN TIMES (Feb. 24, 2011)....................................4

Eric Herman, *Pippen settles suit for $1.5 million/ Former Bulls star still seekd $20 mil. From firms*, CHI. SUN TIMES (Oct. 10, 2007)...............................................................5, 19

Allison Horton, *Pippen: suit says he wasn't bankrupt*, CHI. SUN TIMES (Dec. 14, 2011)..............8

Melissa Isaacson, *Millions in Regrets: Reality Check: Pippen needs to go to work*, CHI. TRIB. (Dec. 19, 2004)..........................................................................................................5, 19

Melissa Isaacson, *Millions in Regrets: Unscrupulous advisors, bad investments, lavish spending leave many athletes bankrupt*, CHI. TRIB. (Dec. 19, 2004) ............................5, 7, 19

Melissa Isaacson, *Pippen gets sued by financial firm*, CHI. TRIB. (March 24, 2009).....................6

William C. Lhotka, *Ex-NBA star loses court ruling here over $5 million debt*, ST. LOUIS POST-DISPATCH (Feb. 17, 2007) ................................................................................................6

Rick Mayer, *UT newspaper in Pippen's suit*, TAMPA TRIB. (Dec. 17, 2011)..................................8

Mike McGraw, *Rose to the rescue again for Bulls*, DAILY HERALD (Feb. 29, 2012) ....................4

Shannon J. Owens, *Tax Day spedial: Broke athletes*, ORLANDO SENTINEL (Apr. 15, 2010)..........7

Steve Patterson, *Lawyers say Pippen owes them*, CHI. SUN TIMES (Jan. 25, 2005) .......................6

*Pip Dream: Pippen Just Latest Retired Pro With Midlife Urget for Final Shot at Glory*, ARIZ. REP. (Feb. 20, 2007)........................................................................................................6

*Pippen in tears as he wins $2 million verdict*, CHI. SUN TIMES (June 29, 2010)............................5

*Pippen's retirement pitfalls are daunting; Former Bulls star has lost millions of dollars, and might turn to broadcasting*, DETROIT NEWS (Dec. 26, 2004)..............................................5

Scottie Pippen, IMDb.................................................................................................................4

*Program cut means layoffs at Fermilab*, CRAIN'S CHI. BUS. (Feb. 21, 2005).................................6

Rick Reilly, *Life of Reilly*, ESPN.COM (July 1, 2008) .................................................................7

Egan Richardson, *Pippen puts his game on display in Scandinavia*, ESPN.COM ...........................6

Mark Riddix, *Seven costly pro athlete screw-ups*, INVESTOPEDIA.COM ...................................7, 23

*Scottie Pippen has lots of money*, ARK. DAILY WEBLOG (Dec. 15, 2011).......................................9

*Scottie Pippen: I'm Suing EVERYONE Who Falsely Reported I was Bankrupt*, TMZ
   (Dec. 13, 2011) .......................................................................................................................8

*Some sports stars watch big salaries disappear*, DET. FREE PRESS (July 23, 2009) ......................7

Shane Tritsch, *Foul Trouble*, CHICAGO MAGAZINE (December 2005)...........................................5

Defendants CBS Interactive Inc., Evolve Media Corporation, Mint Software Inc., NBCUniversal Media, LLC, and InvestingAnswers, Inc. (collectively the "Moving Defendants") respectfully submit this memorandum of law in support of their Rule 12(b)(6) motion to dismiss the Amended Complaint ("Complaint" or "Compl.").

## INTRODUCTION

Plaintiff Scottie Pippen is one of the most celebrated professional basketball players of all time, and he has traded on the world-wide fame he achieved as a professional athlete to secure, *inter alia*, multiple roles on television and in motion pictures. Over the years, Pippen's celebrity has attracted extensive news coverage not only because of his exploits on the basketball court, on television, and in the movies, but also because of the many high-profile lawsuits he has instituted bemoaning the fate of the personal fortune he amassed in those endeavors. In this action, Pippen once again seeks millions of dollars in damages, this time from an array of media companies and universities who disseminated news reports about Pippen's previously well-chronicled financial reversals.

The crux of the Complaint is its allegation that each defendant falsely stated that Pippen was bankrupt. Based on this one common allegation, the Complaint asserts claims of negligence (Count I), false light invasion of privacy (Count II), and defamation *per se* (Count III) against all the defendants. Each of Pippen's legal theories fails to state a claim under Illinois common law and under the protections afforded to defendants by the First Amendment to the United States Constitution.

By claiming defamation *per se*, Pippen seeks to avoid the usual requirement that a defamation plaintiff must plead and prove special damages. But Count III cannot stand under rules of Illinois law that strictly limit the scope of the defamation *per se* tort – rules designed to prevent plaintiffs from obtaining windfall recoveries via *per se* claims despite being unable to prove that they suffered any monetary loss as a result of the publications they challenge.

Pippen's defamation *per se* claim is insufficient as a matter of Illinois law for two reasons. *First*, assuming for the sake of argument that each Moving Defendant stated that Pippen was bankrupt, such a statement cannot, as matter of law, give rise to a *per se* claim because it does not fit into the narrow category of *per se* statements that impute a *lack of integrity or ability in the plaintiff's chosen profession*. The challenged statements do not even remotely question Pippen's integrity or ability in his current job as a team ambassador for the Bulls, nor in his employment as a media personality or as a basketball analyst, coach or player. *Second*, even if the statements *could* be interpreted to attack his professional integrity or ability, Pippen's *per se* claim fails as a matter of law under the Illinois innocent construction rule. That rule provides that if a defendant's alleged statement, when read in context, is open to *any reasonable construction* that is not defamatory *per se*, then the plaintiff's *per se* claim must fail – even if there is another reasonable reading that *would* be defamatory *per se*. Here, each challenged statement is subject to a reasonable construction that does not impugn Pippen's professional integrity or ability.

Apart from these fatal defects under Illinois law, Count III also should be dismissed because Pippen, who is indisputably a public figure, has not pled and cannot plausibly plead facts demonstrating that the Moving Defendants published the challenged statements with "actual malice," *i.e.*, *a high degree of awareness of their probable falsity or despite in fact entertaining serious doubts as to their truth*. Under long-established First Amendment law, a defendant's reliance on previously published, reliable news reports negates a finding of actual malice as a matter of law. Here, defendants' challenged statements followed dozens of analogous accounts of Pippen's highly publicized financial woes. As a result, Pippen has not pled, and will not be able to amend his Complaint to plead, facts establishing the actual malice required to support a defamation claim.

Pippen's claims for negligence and false light invasion of privacy, Counts I and II of the Complaint, fare no better. They are throw-in causes of action based on the same facts that Pippen alleges in his claim of defamation *per se*. Under the First Amendment, a public figure

2

like Pippen cannot evade the requirement of pleading facts showing actual malice by the artifice of placing another label, such as negligence or false light, on claims based on the publication of allegedly false information. Even apart from this constitutional defect, Pippen's false light claim is deficient as a matter of law because the Complaint does not plead special damages with particularity, which is required under Illinois law whenever a plaintiff asserts a false light claim based on statements that, like the statements Pippen challenges here, cannot sustain a defamation *per se* claim.[1]

In sum, each count of the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    Pippen's Celebrity

The Complaint itself trumpets the fact that Pippen is a celebrity. It chronicles in extraordinary detail Pippen's career as a preeminent professional basketball player and the global notoriety he has enjoyed as a result of his athletic prowess, from six National Basketball Association ("NBA") championships, to seven selections as an NBA All-Star, to two Olympic gold medals (including as a member of the original and fabled USA "Dream Team"), to his selection as one of the 50 greatest professional basketball players in history. Compl. ¶ 3. Since retiring as an NBA player in 2004, Pippen has parlayed the fame he achieved as a player into a public persona that transcends the basketball court. By his own account, Pippen has been a constant presence as an on-air personality for, *inter alia*, the Bulls, the *NBA on ABC*, and ESPN. *See id.* He put in a stint as a special assistant coach for the Los Angeles Lakers and, in July 2010, returned to the Bulls as a team ambassador. *Id.* In addition, Pippen has appeared on non-sports television programs including the dramatic series *ER*, *The Tonight Show With Jay Leno*, *The Apprentice*, *The Cleveland Show*, *Kathy Griffin: My Life on the D-List*, and *Kim's Fairytale*

---

[1] Although the principles set forth in this joint memorandum warrant the dismissal of all claims against all defendants, pursuant to the Court's order, each defendant separately submits a brief supplemental memorandum explaining further why the Complaint fails to state a claim against that defendant.

*Wedding: A Kardashian Event – Part 2*, as well as in feature films such as *Midgets and Mascots* and *He Got Game*.[2]  Pippen recently was featured on *The Real Housewives of Miami*, in which his wife played a starring role.  *See, e.g.*, Elliott Harris, *Pippen faces up to TV task*, CHI. SUN TIMES (Feb. 24, 2011) (Add., Ex. 1).

The Complaint also describes some of the countless occasions on which Pippen has participated in media events. His pleading not only reproduces a publicity photograph featuring him, it also explains that, because of the fame he has achieved, "Scottie has signed numerous materials for donations to charity events," which are sold by those charities to raise funds. Compl. ¶ 25.  *See also* Mike McGraw, *Rose to the rescue again for Bulls*, DAILY HERALD (Feb. 29, 2012) (Add., Ex. 2) (recounting how fans recently "lined up down the block to get the Scottie Pippen bobblehead" toy).  As Pippen himself boasted in another lawsuit he initiated, he has achieved public "status as a celebrity."[3]

## B.    Pippen's Well-Publicized Financial Woes and Litigation

With celebrity comes public interest and attention, not all of which may be flattering.  In Pippen's case, following his retirement from the NBA in October 2004, he became a frequent subject of news reports about the numerous lawsuits he initiated regarding alleged multi-million

---

[2] *See* Scottie Pippen, IMDb, http://www.imdb.com/name/nm0685011/.  Courts properly may take judicial notice of such information in the public record on a motion to dismiss.  *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665  F.3d 930, 942-943 (7th Cir. 2012); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008).  This includes, with respect to the records of judicial proceedings in other cases, "judicial notice of the indisputable facts that those documents exist, they say what they say, and they have had legal consequences."  *Indep. Trust Corp.*, 665 F.3d at 943.  Similarly, courts may take judicial notice of the fact that news reports have been published and say what they say, although not the substantive truth of what they report.  *See, e.g.*, *Bardney v. United states*, Nos. 97-1769, 97-1953, 1998 WL 416511, at *4 (7th Cir. June 16, 1998) (unpublished) ("As it is indisputable that the articles were in fact published, the existence of the articles was a proper subject for judicial notice."); *Specht v. Google, Inc.*, 758 F. Supp. 2d 570, 586 (N.D. Ill. 2010) ("The Court takes judicial notice of the existence of these newspaper articles, not the facts contained therein.").  For the Court's convenience, those documents cited herein that are subject to judicial notice have been compiled and attached as an Addendum ("Add.") and filed along with this memorandum.

[3] Amended Complaint, *Pippen et al. v. Lunn Partners, LLC*, No. 04 L 02711 (Cook County) at ¶ 1 (Add., Ex. 3).

dollar investment losses.  Indeed, in the six years that preceded publication of *all* of the news reports at issue in this case, Pippen was the focus of a steady drum beat of press coverage recounting his ongoing and, by his own account, increasingly dire financial circumstances.  *See, e.g.*, Melissa Isaacson, *Millions in Regrets: Unscrupulous advisors, bad investments, lavish spending leave many athletes bankrupt*, CHI. TRIB. (Dec. 19, 2004) ("*Millions in Regrets I*") (Add., Ex. 4) (quoting Pippen: "'You can wake up one day, and someone can decide to take everything you have.'"); Melissa Isaacson, *Millions in Regrets: Reality Check: Pippen needs to go to work*, CHI. TRIB. (Dec. 19, 2004) ("*Millions in Regrets II*") (Add., Ex. 5) (Pippen: "There really isn't any job out there like the NBA where I can just go out there and recoup my money.").[4]  Much of that news coverage reported on Pippen's penchant for initiating serial litigation to recover, from his financial advisors, attorneys, accountants, and various other parties, what *he* described as the "extraordinary" investment losses he had sustained.  *See* Add., Ex. 3 at ¶ 82 (2004 suit against his former financial advisor seeking $30 million); Eric Herman, *Pippen settles suit for $1.5 million; Former Bulls star still seeks $20 mil. from firms*, CHI. SUN TIMES (Oct. 10, 2007) ("*Pippen settles suit*.") (Add., Ex. 8) (describing suits against two sets of former lawyers for malpractice relating to his investments, as well as litigation against an accounting firm); *Pippen in tears as he wins $2 million verdict*, CHI. SUN TIMES (June 29, 2010) (Add., Ex. 9) (describing jury verdict for a fraction of eight-figure losses Pippen had alleged).[5]  During those same six years, Pippen also became embroiled in a host of other highly publicized

---

[4] Such stories were picked up by other news outlets, including one report noting that "[t]hings have gotten so bad that Pippen is considering taking a media job (horrors!)."  *Pippen's retirement pitfalls are daunting; Former Bulls star has lost millions of dollars, and might turn to broadcasting*, DETROIT NEWS (Dec. 26, 2004) (Add., Ex. 6).  *See generally* Shane Tritsch, *Foul Trouble*, CHICAGO MAGAZINE (December 2005), http://www.chicagomag.com/Chicago-Magazine/December-2005/Foul-Trouble/ (Add., Ex. 7).

[5] *See also Emotional Scottie Pippen Wins $2 Million Lawsuit Verdict*,  SPORTS CHANNEL NEWS (June 29, 2010), http://www.sportschannelnews.com/tag/scottie-pippen-bankruptcy (Add., Ex. 10) (reporting that "jury ruled that Pippen deserved blame as well in the bad business deal, awarding him roughly one-quarter of what he asked for," and stating that "Pippen has reportedly lost $120 million in career earnings over the years"); Lisa Donovan, *Pippen: I got bad financial advice; He's looking for a scapegoat, defendant says*, CHI. SUN TIMES (June 9, 2010) (Add., Ex. 11).

lawsuits regarding his asserted financial woes, including a suit against a fellow Olympic "Dream Team" team member for the alleged failure to repay a large loan, *see* Monica Chen, *Pippen wins more than $2.55M in suit vs. Laettner*, DURHAM HERALD SUN (Jan. 21, 2011) (Add., Ex. 12), and suits against companies in which he had allegedly lost significant investments, *see, e.g.*, Patrick Danner, *LITIGATION: Ex-NBA superstar Scottie Pippen sues Sunrise firm; Two Learn.com executives are accused of financial shenanigans by basketball great Scottie Pippen*, MIAMI HERALD (Nov. 22, 2008) (Add., Ex. 13),[6] not to mention a $5 million judgment against him relating to his ill-fated purchase of a private jet, *see U.S. Nat'l Bank Ass'n v. Air Pip, Inc.*, No. 04CC-4235, 2006 WL 4547911 (Mo. Cir. March 24, 2006), *aff'd*, 220 S.W.3d 333 (Mo. App. 2007) (per curiam); William C. Lhotka, *Ex-NBA star loses court ruling here over $5 million debt*, ST. LOUIS POST-DISPATCH (Feb. 17, 2007) ("*Ex-NBA star*") (Add., Ex. 17).

Amid this avalanche of litigation and attendant press coverage, in February 2007, at age 41, Pippen announced publicly that he was considering returning to play in the NBA, an announcement that triggered another flurry of news accounts reporting that "Pippen cannot withstand the lawsuits financially and needs to play again to make his bills."[7]  Ultimately, but for a three game exhibition in Scandinavia in January 2008, for which he reportedly received a $66,000 appearance fee, Pippen abandoned his comeback.[8]

---

[6] *See also* Melissa Isaacson, *Pippen gets sued by financial firm*, CHI. TRIB. (March 24, 2009) (Add., Ex. 14); Steve Patterson, *Lawyers say Pippen owes them*, CHI. SUN TIMES (Jan. 25, 2005) (Add., Ex. 15); *Program cut means layoffs at Fermilab*, CRAIN'S CHI. BUS. (Feb. 21, 2005), *available at* 2005 WLNR 2927219 (Add., Ex. 16) ($1.4 million loan default by Pippen).

[7] *25 Rich Athletes Who Went Broke (10-1)*, BUSINESS PUNDIT (Jan. 1, 2009), http://www.businesspundit.com/25-rich-athletes-who-went-broke-10-1/) ("*25 Rich Athletes*") (Add., Ex. 18); *see also, e.g.*, *Ex-NBA star* (Add., Ex. 17) ("Former Chicago Bulls basketball player Scottie Pippen told a newspaper this week that he would consider a comeback at age 41.  Thanks to courts here, he could use the money."); *Pip Dream: Pippen Just Latest Retired Pro With Midlife Urge for Final Shot at Glory*, ARIZ. REP. (Feb. 20, 2007) (Add., Ex. 19) ("We're sure this Pip dream has nothing to do with the fact that he's reportedly losing a breach-of-contract lawsuit that could end up costing him more than $5 million.").

[8] Egan Richardson, *Pippen puts his game on display in Scandinavia*, ESPN.COM (Jan. 14, 2008), http://sports.espn.go.com/espn/print?id=3195138&type=story (Add., Ex. 20).

Pippen's long and well-publicized history of pleading poverty, both in the judicial system and in the press, made him a poster child for journalists chronicling the financial difficulties of those coping with life as retired professional athletes. In the years prior to the publication of *any* of the accounts at issue in this case, multiple news reports cited Pippen as a cautionary tale when compiling round-ups of financially troubled sports stars. *See, e.g.*, *Millions in Regrets I* (Add., Ex. 4) (2004 report: "Pippen is far from alone, even among athletes whose wages defy the common man's understanding. … 'People would be shocked,' said agent Ron Shapiro, who has 30 major-league clients. 'A significant number of professional athletes are de facto bankrupt, meaning their debts outstrip their assets.'"); *25 Rich Athletes* (Add., Ex. 18) (2009 report: of athletes who "went broke": "No. 8: Scottie Pippen …."); Mark Riddix, *Seven costly pro athlete screw-ups*, Investopedia.com (Mar. 10, 2010), http://sports.yahoo.com/top/news?slug=ys-investopediamoneyloss031010 ("*Seven costly pro athlete screw-ups*") (Add., Ex. 21) (listing professional athletes "flirting with bankruptcy" or "broke," soon after retirement: "Known more for his on court defense that his off court business sense, former Chicago Bulls star Scottie Pippen lost $120 million in career earnings due to poor financial planning and bad business ideas"); Shannon J. Owens, *Tax Day special: Broke athletes*, Orlando Sentinel (Apr. 15, 2010), http://articles.orlandosentinel.com/2010-04-15/sports/os-tax-day-broke-athletes_1_yahoo-sports-derrick-coleman-lenny-dykstra (Add., Ex. 22) (same). [9] The Complaint contains no reference to any of these reports published from 2004 through 2010, much less any averment that Pippen ever sought a clarification or correction of any of them.

---

[9] *See also, e.g.*, Geoffrey C. Arnold, *Players Can Be Easy Money*, Oregonian (Feb. 14, 2005) (Add., Ex. 23) ("NBA players might think they are invincible sometimes, but news of the financial problems of Scottie Pippen and Jason Caffey probably make them think twice. … Pippen and Caffey are just two of the most recent players who have lost money."); Rick Reilly, *Life of Reilly*, ESPN.com (July 1, 2008) (Add., Ex. 24) ("Filing for bankruptcy is a long-standing tradition of NBA players, 60% of whom, according to the *Toronto Star*, are broke five years after they retire, … Scottie Pippen borrowed $4.375 million to buy some wings and spent God knows how much more for insurance, pilots and fuel. Finally, his wallet cried uncle. The courts say he still owes $5 million, including interest. See you in coach, Scottie!"); *Some sports stars watch big salaries disappear*, Det. Free Press (July 23, 2009) at A5 (Add., Ex. 25) ("Scottie Pippen: Michael Jordan's sidekick sued financial advisor Robert Lunn in 2004, saying he lost $17 million. He received an $11.8 million judgment; Lunn went into bankruptcy.").

C.   **Pippen's Complaint Against the Defendants for Covering the Long-Running Story of his Financial Problems**

In December 2011, Pippen filed yet another lawsuit, this one against the Moving Defendants.  In it, he complains that "[i]t is a most foul thing indeed to be falsely accused of being bankrupt" and asserts for the first time that, in his case, such an accusation is false. Compl. ¶¶ 1-2.  The Moving Defendants each disseminated separate reports in 2011 that chronicled the financial travails of professional athletes and, like dozens of previously published accounts, cited Pippen's own well-reported difficulties.[10]  The Complaint does not, and could not in good faith, allege that Pippen ever requested a correction from any of the Moving Defendants or otherwise sought, prior to filing this latest in his series of lawsuits, to notify any of them that, despite his self-described "extraordinary" financial losses, he had not sought protection in bankruptcy.

Instead, Pippen instituted this litigation.  His Complaint contains identical claims of negligence (Count I), false light (Count II) and defamation *per se* (Count III) against all defendants based on one common allegation: that each defendant published statements that "falsely accused [Pippen] of being bankrupt."  Compl. ¶ 1.  This declaration of falsity has itself drawn substantial media attention.  As one newspaper reported, "[f]ormer pro basketball star Scottie Pippen wants the world to know he isn't broke."  Rick Mayer, *UT newspaper in Pippen's suit*, TAMPA TRIB. (Dec. 17, 2011) (Add., Ex. 26); *see also, e.g.*, Allison Horton, *Pippen: suit says he wasn't bankrupt*, CHI. SUN TIMES (Dec. 14, 2011) (Add., Ex. 27) ("Former Bulls star Scottie Pippen filed a multimillion-dollar federal lawsuit Tuesday that claims several websites falsely accused him of filing for bankruptcy when he's actually worth at least $40 million."); *Scottie Pippen: I'm Suing EVERYONE Who Falsely Reported I Was Bankrupt*, TMZ (Dec. 13, 2011), available at http://www.tmz.com/2011/12/13/ scottie-pippen-broke-arizona-state-cbs-lawsuit-nbc/ (Add., Ex. 28) ("Scottie Pippen claims he's been unfairly portrayed in the media as

---

[10] Each defendant separately describes the news report it published in its supplemental memorandum.

a walking financial disaster – and now he's suing every media outlet that reported he went bankrupt ... claiming he hasn't been worth LESS than $40,000,000 in the last 10 years.").  One publication headlined its report simply, "Scottie Pippen has lots of money."  *Scottie Pippen has lots of money*, ARK. DAILY WEBLOG, 2011 WLNR 25799329 (Dec. 15, 2011) (Add., Ex. 29).

## ARGUMENT

A complaint is properly dismissed if it "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, the plaintiff must do more in the complaint than simply recite elements of a claim; the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  The complaint must set forth facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *See Iqbal*, 129 S. Ct. at 1949.  The court "need not accept as true 'legal conclusions, [or] threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).  Rather, the plaintiff must "present a story that holds together" and would, if the facts were proven as alleged, satisfy each element of his claim.  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## I.  COUNT III FAILS TO STATE A DEFAMATION *PER SE* CLAIM

Pippen bases his defamation *per se* claim solely on his allegation that each defendant falsely stated that he was "bankrupt," when in fact "he never filed [a] bankruptcy."  Compl. ¶ 24 (emphasis omitted); *see also id.* ¶1.  Such statements, however, are insufficient to sustain a *per se* claim as a matter of law.

A cause of action for libel *per se* presumes damages, and therefore is a narrow exception to the general tort rule that a plaintiff must plead and prove actual damages to recover from a defendant.  Because of the harshness of the presumption of damages in a *per se* claim, Illinois

9

courts have circumscribed this cause of action. *First*, *per se* claims are limited to statements "so obviously and materially harmful to a plaintiff that his injury may be presumed." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005); *see Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 411-12, 667 N.E.2d 1296, 1301 (1996) ("To be considered defamatory *per se*, the challenged statement 'must be so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary'") (*quoting Owen v. Carr*, 113 Ill. 2d 273, 277, 497 N.E.2d 1145, 1147 (1986)). *Second*, a statement must fit within one of five specific categories of statements that Illinois law recognizes as constituting *per se* claims. *See Cody*, 409 F.3d at 857. *Third*, even if a "challenged statement fits within one of the recognized categories that will sustain a *per se* action, recovery will not be allowed if the statement can reasonably be given an innocent construction" under the Illinois "innocent construction rule." *Anderson*, 172 Ill. 2d at 412, 667 N.E.2d at 1301.

Whether a statement is defamatory *per se* is a question of law to be determined by the court. *See Green v. Rogers*, 234 Ill. 2d 478, 492, 917 N.E.2d 450, 459 (2009); *May v. Myers*, 254 Ill. App. 3d 210, 213, 626 N.E.2d 725, 727 (3d Dist. 1993). Courts routinely dismiss defamation *per se* claims with prejudice at the pleading stage where the challenged statements do not fit into any of the *per se* categories or are reasonably capable of an innocent construction. *See, e.g.*, *Cody*, 409 F.3d at 856-57 (affirming order dismissing complaint with prejudice where defendants' alleged statements did not fit into any category of defamation *per se*); *Lott v. Levitt*, 469 F. Supp. 2d 575, 583 (N.D. Ill. 2007) (applying innocent construction rule to dismiss *per se* claim with prejudice), *aff'd* 556 F.3d 564 (7th Cir. 2009); *Seith v. Chicago Sun-Times Inc.*, 371 Ill. App. 3d 124, 134-35, 861 N.E.2d 1117, 1127 (1st Dist. 2007) (stating that court properly may dismiss complaint with prejudice under innocent construction rule).

Pippen's defamation *per se* claim fails as a matter of law for two independent reasons. *First*, to the extent that any of the Moving Defendants' statements can be read to assert that Pippen was bankrupt, such a statement cannot sustain a *per se* claim because it does not fit into

any of the required *per se* categories.  *Second*, each defendant's statements are reasonably capable of a construction that is not actionable *per se* under the innocent construction rule.

> **A.      Any Statement That Pippen Was Bankrupt Cannot Sustain a Libel *Per Se* Claim Because it Does Not Fit Into Any of the *Per Se* Categories**

Illinois law strictly limits libel *per se* to statements that fit within one of five categories:

> (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those imputing a lack of ability, or that prejudice a party in his trade, profession, or business; and (5) those imputing adultery or fornication.

*Cody*, 409 F.3d at 857 (citation omitted); *accord Green*, 234 Ill. 2d at 491-92, 917 N.E.2d at 459.

Categories (3) and (4) are the only ones conceivably relevant to the *per se* claim that Pippen has alleged in this case.  Illinois law has long recognized that to fit within either category, statements must be "related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody*, 409 F.3d at 857 (statements implying that plaintiff lacked personal integrity, judgment and maturity were not defamatory *per se* because they did not go to his professional traits as a radio station manager); *see also Green*, 234 Ill. 2d at 502, 917 N.E.2d at 465 (ruling that plaintiff's defamation *per se* claim should have been dismissed where statement at issue did not "'prejudice the plaintiff or *impute a lack of ability in his professions*'") (emphasis added) (citations omitted); *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008) ("We have found that statements deemed to be defamatory *per se* in Illinois under these categories *have been related to job performance*, as opposed to attacks related to personal integrity and character.") (emphasis added).

Further, to fit within either of these two *per se* categories, a statement must impute to the plaintiff a lack of ability or integrity in the performance of his *specific* profession.  A statement imputing "general professional unfitness" does not fit within these narrowly circumscribed *per se* categories.  *See, e.g., Anglin v. Sears, Roebuck and Co.*, No. 93 C 3438, 1994 WL 178297 *5 (N.D. Ill. May 9, 1994) (rejecting plaintiff's argument that words allegedly imputing "'unfitness

to function in a professional position and corporate setting'" were defamatory *per se* where they did not specifically impute an inability to perform the plaintiff's job as a technical consultant) (citation omitted).

Thus, statements that a plaintiff failed to fulfill obligations, or generally imputing unreliability to the plaintiff, cannot sustain a *per se* claim unless they impute a lack of integrity or ability in the plaintiff's particular job or business. For example, in *Union Pacific Railroad Co. v. Village of South Barrington*, the court held that a statement that the plaintiff breached a contract was not defamatory *per se*. 958 F. Supp. 1285, 1300 (N.D. Ill. 1997). Similarly, the court in *Springer v. Harwig* held that a report about a lawsuit against the plaintiff and his failure to perform under an agreement was not defamatory *per se* because it did not "in itself, charge him with lack of ability or integrity in his business." 94 Ill. App. 3d 281, 283, 418 N.E.2d 870, 872 (1st Dist. 1981).

Even statements alleging misconduct, bad judgment, irresponsibility or lack of integrity are not defamatory *per se* unless they specifically impugn the "plaintiff's work or conduct while carrying out his employment duties." *Cody*, 409 F.3d at 858 (statements implying that plaintiff "lacks the integrity and judgment to resist getting revenge in an immature and vicious manner" were not defamatory *per se*); *see also Green*, 234 Ill. 2d at 501-02, 917 N.E.2d at 464-65 (accusations of "'misconduct with children'" and "'abus[ing] players, coaches and umpires'" did not prejudice plaintiff or impute lack of ability in his professions as a dentist and lawyer, and therefore were not defamatory *per se*) (citation omitted); *Sangston v. Ridge Country Club*, No. 92 C 1981, 1992 WL 317138, at *4 (N.D. Ill. Oct. 29, 1992) (statement that plaintiff was terminated for misconduct from his position as country club manager "does not insinuate that he is unable to capably perform *managerial duties*" and therefore was not defamatory *per se*) (emphasis added), *aff'd*, 35 F.3d 568 (7th Cir. 1994) (unpublished).

Here, Pippen has been working as a team ambassador for the Bulls since July 2010 after stints as a basketball analyst for the Bulls, *NBA on ABC*, and ESPN, as a special assistant coach for the Los Angeles Lakers, and as a star NBA player. Compl. ¶ 3. Under well-established

Illinois law, to be actionable *per se*, the allegedly defamatory statements would have to impute to Pippen a lack of integrity or ability or prejudice him *as a team ambassador*, or arguably as a media personality, basketball analyst, coach or player. *See Cody*, 409 F.3d at 858 (statements going to plaintiff's "personal, rather than professional, traits," and to misconduct that "did not even occur while [plaintiff] was on the job" were not defamatory *per se*); *Anglin*, 1994 WL 178297, at *5; *Sangston*, 1992 WL 317138, at *4.

The statements at issue in this case did not contain any such attacks on Pippen in his employment or profession. Pippen's professional conduct was not even the subject of any of defendants' articles, which merely discussed the personal financial reversals of Pippen and other famous athletes. Under these circumstances, a statement that Pippen was bankrupt does not "obviously and materially" impugn his integrity or ability as a team ambassador nor, for that matter, as a media personality, basketball analyst, coach or player. *Cody*, 409 F.3d at 857. At most, such a statement suggests only that Pippen was unable to pay creditors and sought the protection of the bankruptcy laws. Just as statements that the plaintiffs in *Union Pacific* and *Springer* breached obligations were held not to be defamatory *per se*, a statement suggesting that a retired athlete and team ambassador like Pippen sought bankruptcy protection is not so obviously and materially harmful to him in his chosen professions as to warrant the extraordinary presumption of damages inherent in a *per se* claim, because it does not indicate that Pippen is "unable to capably perform" his employment duties, *Sangston*, 1992 WL 317138, at *4, or that he "lacks integrity in carrying out his professional functions," *Cody v. Harris*, No. 03-CV-934, 2004 WL 783105, at*4 (N.D. Ill. Jan . 22, 2004), *aff'd*, 409 F.3d 853 (7th Cir. 2005).

Further, a statement that Pippen sought protection in bankruptcy – as many thousands of people in the United States do every year, for a wide variety of reasons – does not impute to him any dishonesty or misconduct. A statement that Pippen was bankrupt may suggest that he was the victim of bad financial advice, made poor personal financial decisions, or simply had bad luck in his finances. None of those putative meanings imputes a lack of professional integrity to Pippen, as they must to sustain a *per se* claim. There is no allegation in the Complaint – and no

13

plausible allegation could be made – that Pippen's role as a team ambassador, or his jobs as a basketball analyst, television personality, coach or player, depended on Pippen's financial acumen or investment abilities. Moreover, "attacks related to personal integrity and character have not been deemed defamatory *per se.*" *Cody*, 409 F.3d at 858.

Pippen evidently bases his *per se* claim on *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527 (7th Cir. 2009), but the facts of that case actually show why Pippen's *per se* claim fails as a matter of law. In *Giant Screen*, the defendant bank stated that the plaintiff company was "still in default" of payment obligations and had failed or refused to pay its obligations. *Id.* at 533. The court held that the bank's statements could support a *per se* claim, but only because the term "'[d]efault,' *when used to describe the status of a transacting business*, is the willful refusal to pay an obligation," and that "the statements, taken as a whole, convey the untrue imputation that Giant Screen is an *intentionally dishonest business entity*, which *purposely disregards its financial contracts*." *Id*. at 534 (emphasis added). In short, the statements at issue were an accusation that the plaintiff "purposely welshed on its financial obligations." *Id.*

A mere statement that Pippen was bankrupt stands in stark contrast to the direct attack on the business integrity of the plaintiff company in *Giant Screen*. *First*, the term "bankrupt" does not impute to Pippen any intentional dishonesty as team ambassador or in any of his other professional roles. *Second*, a statement, like the one in *Giant Screen*, that a transacting business refuses to pay its debts may be so obviously and materially harmful that it constitutes defamation *per se* because "[t]he natural and obvious response of anyone contemplating entering an agreement" with the business is to "take his business elsewhere." *Id.* By contrast, it is not "natural and obvious" that someone who read a statement that Pippen went bankrupt would therefore refuse to hire or retain him as a team ambassador, basketball analyst, media personality, coach or player.

In essence, Pippen's claim depends on the proposition that a statement imputing bankruptcy constitutes a sixth *per se* category. But that is not the law in Illinois, where the

courts repeatedly have limited the scope of defamation *per se* to only the most egregious statements that fit within the five existing *per se* categories. *See, e.g.*, *Anderson*, 172 Ill. 2d at 411-12, 667 N.E.2d at 1301. The Moving Defendants' alleged statements are not defamatory *per se* and the Court should therefore dismiss Count III with prejudice.

### B. The Challenged Statements Are Not Actionable *Per Se* Under the Illinois Innocent Construction Rule

Even where a challenged statement could be construed to fit within one of the defamation *per se* categories, a complaint must nevertheless be dismissed under the Illinois "innocent construction rule" if the statement also can be given a reasonable innocent construction (*i.e.*, one that would *not* be actionable *per se*). *See Anderson*, 172 Ill. 2d at 411-12, 667 N.E.2d at 1301. As the Seventh Circuit has held, "not all statements that fall into one of these five categories are necessarily actionable *per se* – the statement's only reasonable readings must also be defamatory in nature. In other words, a statement that is reasonably capable of an innocent construction is not *per se* defamatory." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009); s*ee also Green*, 234 Ill. 2d at 501-02, 917 N.E.2d at 464 (holding that *per se* claims should be dismissed where challenged statements were reasonably capable of an innocent construction that did not "impute a lack of integrity in plaintiff's chosen professions"); *May*, 254 Ill. App. 3d at 214, 626 N.E.2d at 728 (affirming dismissal of *per se* claims under innocent construction rule where challenged statements did not "on their face indicate that plaintiff is unable to discharge his duties for lack of integrity or impute a lack of ability to be a priest").

Whether a statement is reasonably capable of an innocent construction, and therefore cannot sustain a *per se* claim, is a question of law for the Court. *Tuite v. Corbitt*, 224 Ill. 2d 490, 509, 866 N.E.2d 114, 126 (2007). Courts regularly dismiss defamation *per se* claims with prejudice at the pleading stage based on the innocent construction rule. *See, e.g.*, *Lott v. Levitt*, 469 F. Supp. 2d 575 (N.D. Ill. 2007), *aff'd*, 556 F.3d 564 (7th Cir. 2009); *see also Salamone v. Hollinger Int'l, Inc.*, 347 Ill. App. 3d 837, 841-42, 807 N.E.2d 1086, 1091 (1st Dist. 2004).

The innocent construction rule requires the Court to consider the statements in context and to give the words of the statements and their implications their natural and obvious meanings. *See Green*, 234 Ill. 2d at 499, 917 N.E.2d at 463; *Tuite*, 224 Ill. 2d at 512, 866 N.E.2d at 127. "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." *Lott*, 469 F. Supp. 2d at 580. The question in the court's analysis is not whether an innocent construction is "equally or more reasonable" than a defamatory *per se* construction. *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 262-63, 581 N.E.2d 275, 279-80 (1st Dist. 1991). The Illinois Supreme Court has made clear that "[t]here is no balancing of reasonable constructions." *Green*, 234 Ill. 2d at 500, 917 N.E.2d at 463 (internal quotation marks and citation omitted). Thus, if a statement, when considered in its full context, is capable of any reasonable interpretation that is not libelous *per se*, the innocent construction rule requires that the court adopt that interpretation and deem the statement to be nonactionable *per se* as a matter of law, irrespective of whether it also is susceptible of a defamatory *per se* construction – even one that is more reasonable.

As discussed above, a statement that Pippen sought protection in bankruptcy is categorically not defamatory *per se* under Illinois law. But even if such a statement *could* fall into the category of statements that impute to Pippen a lack of integrity or ability in his trade, profession or business, Count III still must be dismissed under the innocent construction rule, because each Moving Defendant's challenged statements are capable of a reasonable construction that does not impute to Pippen such a lack of professional integrity or ability. Since each defendant's innocent construction argument is based on the specific challenged statements it allegedly made, each defendant further briefs the innocent construction argument in its supplemental memorandum.

II.     **PIPPEN'S CLAIMS FAIL TO STATE A CLAIM BECAUSE HE HAS NOT AND CANNOT ADEQUATELY PLEAD THAT ANY DEFENDANT BREACHED THE APPLICABLE STANDARD OF CARE**

Each of Pippen's causes of action requires him to plead – and ultimately, to prove – that the Moving Defendants violated the applicable standard of care. *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 727-28 (7th Cir. 2004) ("At common law, defamation was a strict liability tort, but constitutional doctrine has imposed culpability, or fault, requirements in most cases."); *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56-57 (1988) (requiring same showing of fault for all tort claims, however denominated, arising from published content).

Where, as here, the plaintiff is a public figure, he must plead and prove, by clear and convincing evidence, that the defendant published a false statement of fact with "actual malice." *Madison v. Frazier*, 539 F.3d 646, 657 (7th Cir. 2008) (public figure "cannot maintain a suit for defamation unless he can prove that the Defendants[] acted with 'actual malice.'"); *see also Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1141 (7th Cir. 1985) (same).  A plaintiff's public figure status is an issue of law to be decided by the court. *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996).

The law differentiates public figures from private figures, who need prove only that the defendant was negligent, because "[t]hose who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention" assume a place on the public stage and thereby both "run[] the risk of closer public scrutiny" and achieve "access to the channels of effective communication" to correct falsehoods published about them. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 344 (1974).  In contrast, private figures who have avoided public attention and have little access to the media are entitled to greater legal protection because "people who do not thrust themselves into the public eye have on average a greater sense of privacy than those who do," and because "obscure people" have difficulty "compared to celebrities, in commanding the media's attention to efforts to rebut innuendoes about them." *Douglass*, 769 F.2d at 1141.

17

Accordingly, for celebrities and others who qualify as public figures to prevail on tort claims arising from allegedly false publications, they must establish "actual malice" – *i.e.*, a legal term of art requiring proof that the statement at issue was published despite "knowledge of its falsity or in reckless disregard of whether it was false or true." *Madison*, 539 F.3d at 657. In this context, "[r]eckless disregard 'is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.'" *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Rather, "[t]his inquiry is a subjective one – there must be sufficient evidence to permit the conclusion that the defendant published defamatory statements despite a *high degree of awareness of probable falsity or entertaining serious doubts as to its truth*." *Id.* at 657-58 (citations omitted, emphasis added); *accord Harris v. Quadracci*, 48 F.3d 247, 252 (7th Cir. 1995) (same); *see also, e.g.*, *Underwager v. Salter*, 22 F.3d 730, 733 (7th Cir. 1994) ("'actual malice' – a term that reads to the untutored eye as a proxy for 'ill will' . . . actually means knowledge that the statement was false, or doubts about its truth coupled with reckless disregard of whether it was false") (citations omitted); 1 Robert D. Sack, *Sack on Defamation* ("Sack") § 5:5.2 (4th ed. 2010) ("It is not enough for a plaintiff to prove that the defendant was negligent, or failed to investigate, or that the defendant made a mistake in interpreting events, documents, or sources, or selected the wrong term or language . . . .") (footnotes omitted). Because the constitutional balance has been struck in favor of the First Amendment when public figures assert claims like those at issue here, the actual malice standard is purposefully designed to be "a daunting one." *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996).

As demonstrated below, Pippen is a public figure as a matter of law and has effectively conceded as much in his own pleading. Because he has not pleaded facts sufficient plausibly to allege actual malice, and because amendment here would be futile, his Complaint should be dismissed with prejudice.

### A.    Pippen Is a Public Figure as a Matter of Law

The Supreme Court has identified two categories of "public figures" – "general purpose" and "limited purpose." *Gertz*, 418 U.S. at 345.  General purpose public figures have "assumed roles of especial prominence in the affairs of society," or have otherwise achieved "pervasive fame or notoriety," and therefore are public figures "for all purposes and in all contexts." *Id.* at 345, 351.  Simply put, these plaintiffs are celebrities, those "well-known entertainers and athletes [who] frequently endorse products and candidates, thereby indicating the breadth of their influence and the appropriateness of broad press scrutiny." *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1253 n.22 (5th Cir. 1980) (citing *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980)).

There can be little dispute that, as a preeminent professional athlete who stood at the pinnacle of his public profession for many years, Pippen is a classic general purpose public figure.[11]  Indeed, Pippen's highly unusual Complaint devotes no less than three pages to setting out details of his illustrious career as a basketball player, a career in which he became known to tens of millions of television viewers around the world.  In a host of cases, courts have held that athletes who have achieved far less fame than Pippen are public figures.  In *Bell v. Associated Press*, for example, a federal court ascribed public figure status to a professional football player. 584 F. Supp. 128, 130 (D.D.C. 1984).  In so holding, the court explained that "[p]rofessional

_____

[11] Pippen also qualifies as a limited purpose public figure. While a general purpose public figure has achieved "'general fame or notoriety in the community'" and is therefore deemed a public figure on a broad range of topics, a limited purpose public figure is "'an individual [who] voluntarily injects himself or is drawn into a particular public controversy'" and thereby "'becomes a public figure for a limited range of issues.'" *Harris v. Quadracci*, 48 F.3d 247, 250 (7th Cir. 1995) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974)).  Pippen has voluntarily and repeatedly entered the public arena to address the issue of financial difficulties faced by retired professional athletes. *See, e.g.*, *Millions in Regrets I* (Pippen: "'You can wake up one day, and someone can decide to take everything you have.'"); *see also, e.g.*, *Millions in Regrets II* (Add., Ex. 5); *Pippen settles suit* (Add., Ex. 8).  Thus, even were Pippen not a general purpose public figure, he would qualify as a limited purpose public figure for purposes of this case. *See, e.g.*, *Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1270 (7th Cir. 1996) ("A person who injects himself into a public controversy assumes the risk of negative public comment on his role in the controversy, both contemporaneously and into the future. . . .  In [plaintiff's] case, the risk includes comment on his financial responsibility during his time in the public eye.").

athletes, including football players, have frequently been held to be public figures, especially when they have achieved fame or notoriety." *Id.* Well-known professional athletes "can hardly be permitted to hold themselves out as public figures, seeking a maximum amount of publicity for themselves and their teams with respect to their athletic achievements, while successfully claiming strictly private status when misconduct is charged or proved." *Id.* at 131-32. *See also, e.g.*, *Time, Inc. v. Johnston*, 448 F.2d 378, 380 (4th Cir. 1971) (retired professional basketball player a public figure); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1280-81 (3d Cir. 1979) (former professional football player a public figure); *Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) ("extraordinary baseball player" a public figure); *Thoroughbred Legends, LLC v. Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *13 (N.D. Ga. Feb. 12, 2008) (retired professional jockeys public figures); *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1095 (D. Haw. 2007) (professional surfer a public figure), *aff'd on other grounds*, 401 F. App'x 243 (9th Cir. 2010) (unpublished). Indeed, most professional athletes concede the obvious when they institute litigation such as this case. *See, e.g.*, *Piersall v. Sportsvision of Chicago*, 230 Ill. App. 3d 503, 595 N.E.2d 103 (1st Dist. 1992) (retired major league baseball player conceded public figure status); *Sprewell v. NYP Holdings, Inc.*, 819 N.Y.S.2d 851 (N.Y. 2006) (unreported) (same with respect to another professional basketball player), *rev'd on other grounds*, 841 N.Y.S. 2d 7 (N.Y. A.D. 2007).

While the analysis need go no further, Pippen is more than just a preeminent retired professional basketball player. He has successfully leveraged his fame into a second career as, among other things, a television sportscaster, team ambassador, movie actor, and reality television star. Compl. ¶¶ 3, 25; *see above*, at 3-4. Thus, he has become the kind of professional celebrity for which the general purpose public figure category was created. As the Fifth Circuit recognized when it held that a retired professional athlete and his entertainer-wife were both public figures, the former's football career made him well known enough to "open business opportunities for him for the rest of his life." *Brewer*, 626 F.2d at 1257-59; *see also, e.g.*, *Douglass*, 769 F.3d at 1141 ("successful actress and model" a public figure); *Carafano v.*

20

*Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 1072 (C.D. Cal. 2002) (actress who appeared in movies and long-running television program a public figure), *aff'd on other grounds*, 339 F.3d 1119 (9th Cir. 2003). Pippen has similarly chosen a life in the public spotlight and, as a result, he is a general purpose public figure who must both plead and establish "actual malice" to sustain viable claims against the Moving Defendants.

### B.    Pippen Has Failed To Satisfy Federal Pleading Standards

With respect to the standard of care, the Complaint contains only an unadorned and conclusory allegation that the "Defendant's unprivileged defamations . . . were published with actual malice and/or utter disregard for Scottie's rights and interests." Compl. ¶ 42. Following the Supreme Court's decisions in *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), federal courts adjudicating analogous defamation actions brought by public figures have made clear that such averments fail to state a viable claim. Most recently, the First Circuit affirmed dismissal of a defamation claim by a public figure who – like Pippen here – pleaded only "actual-malice buzzwords." *Schatz v. Republican State Leadership Comm.*, --- F.3d ----, 2012 WL 414264, at *5 (1st Cir. Feb. 10, 2012) (holding that plaintiff's "complaint used actual-malice buzzwords . . . [b]ut these are merely legal conclusions, which must be backed by well-pled facts"); *accord Hanks v. Wavy Broad., LLC*, No. 2:11cv439, 2012 WL 405065, at *13 (E.D. Va. Feb. 8, 2012) (dismissing claim because "[m]erely pleading the standard for actual malice in the Complaint without more is insufficient to state a claim").[12]

---

[12] *See also Carrasco v. HSBC Bank USA Nat'l Ass'n*, No. C-11-2711 EMC, 2011 WL 6012944, at *4 (N.D. Cal. Dec. 1, 2011) (dismissing slander of title claim where plaintiff made only boilerplate allegations of actual malice); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 713 F. Supp. 2d 527, 537 (W.D.N.C. 2010) ("Plaintiffs do not state a defamation claim because they fail to allege facts that show actual malice. Plaintiffs instead resort to the type of 'formulaic recitation of the elements of a cause of action' that the Supreme Court has held 'will not do.'") (citations omitted); *Hakky v. Washington Post Co.*, No. 8:09-cv-2406-T-30MAP, 2010 WL 2573902, at *6 (M.D. Fla. June 24, 2010) (dismissing defamation claim where plaintiff failed to allege facts demonstrating fault; *Diario El Pais, S.L. v. Nielson Co. (US), Inc.*, No. 07 CV 11295 (HB), 2008 WL 4833012, at *6-7 (S.D.N.Y. Nov. 6, 2008) ("Plaintiff's conclusory and unsupported assertions that the Defendant knew the [statements at issue] were inaccurate are insufficient to meet the pleading requirements for actual malice."). The outcome of these cases reflect no seismic shift in the law. Even prior to the Supreme Court's decisions in

In this regard, *Mayfield v. National Association for Stock Car Auto Racing, Inc.*, a case in which professional race car driver Jeremy Mayfield and his company asserted a claim for defamation, is particularly instructive. For one thing, the court easily concluded that, as a professional driver, Mayfield was a public figure. 713 F. Supp. 2d 527, 538 (W.D. N.C. 2010) ("Mr. Mayfield has been a race car driver for 17 years, and as a NASCAR driver, he has been a participant in a popular, nationally televised sport."). For another, although Mayfield's complaint formulaically alleged "actual malice," the court nevertheless dismissed it because it "fail[ed] to allege any facts in support of this legal conclusion." *Id.* at 537-39.

In this case, Pippen not only fails to allege *any* facts in support of his conclusory invocation of the words "actual malice," the facts that he does allege affirmatively establish his inability to meet that standard as a matter of law. Specifically, the Complaint alleges only that "Defendants' sloppy conduct . . .was especially egregious in view of the fact that a mere click of the mouse for bankruptcies in Scottie's home State would have illustrated he ***never*** filed a bankruptcy." Compl. ¶ 27. It is, however, well settled that neither "sloppy" journalism nor a "failure to investigate" is sufficient to prove actual malice as a matter of law. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1271 (7th Cir. 1996) ("The allegations against [Defendants] imply (at most) failure to investigate, and do not suggest the requisite knowledge of falsity or reckless disregard towards falsity.") (citations omitted). The First Circuit recognized as much in *Schatz*, where the plaintiff similarly pled facts

---

Iqbal and *Twombly*, federal courts dismissed complaints where allegations of actual malice were facially insufficient. *See, e.g.*, *Nicosia v. DeRooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999) (dismissing defamation claim by conceded limited-purpose public figure because alleged "animus" and "economic interests" failed to plead actual malice); *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 65 (D.D.C. 1988) (granting motion to dismiss where "[t]he complaint lacks any colorable claim that *The Washington Times* published the challenged statements with actual malice"); *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983) ("broad conclusory allegations of malice" insufficient to survive motion to dismiss), *aff'd*, 732 F.2d 163 (9th Cir. 1984) (unpublished).

that arguably stated a claim for negligence – that defendants "passed on doing 'additional' legwork," and exhibited "carelessness." 2012 WL 414264, at *7. Because such failure to investigate and alleged sloppiness do not constitute actual malice as a matter of law, however, the First Circuit affirmed the dismissal of the action because the plaintiff failed to allege a "plausible" claim. *Id. See also, e.g.*, *Egiazaryan v. Zalmayev*, No. 11 Civ. 2670 (PKC), 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (dismissing defamation claim where plaintiff alleged "hostility" but no facts indicating an "attempt to inflict harm through *falsehood*"); *Diario El Pais, S.L. v. Nielson Co. (U.S.), Inc.*, No. 07 CV 11295 (HB), 2008 WL 4833012, at *6-7 (S.D.N.Y. Nov. 6, 2008) (dismissing action where "plaintiffs' own allegations" showed lack of actual malice).

### C. Because Any Amendment Would Be Futile, the Complaint Should Be Dismissed With Prejudice

Because Pippen already has amended his complaint once, any further amendment requires the consent of defendants or leave of court. Fed. R. Civ. P. 15(a). While leave to amend is in most cases freely given, "it is well settled that a district court may refuse leave to amend where amendment would be futile." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943-44 (7th Cir. 2012). This is such a case. Pippen cannot dispute that he has been embroiled for years in financial litigation, which has resulted in extensive news coverage of his serial attempts to recoup his self-described "exceptional" losses. Add., Ex. 3 at 26. Nor can he contest the reality that numerous news reports over the years chronicled his financial difficulties, including by stating that he was "broke" and that he "lost $120 million in career earnings due to poor financial planning and bad business ideas." *Seven costly pro athlete screw-ups* (Add., Ex. 21); *see generally* above at 4-7. And he cannot deny either that a litany of such news reports preceded publication of *any* of the virtually identical articles at issue in this case or that the Moving Defendants' publications (as described more fully in their separately filed supplemental memoranda) self-evidently rely on this body of prior reporting.

23

It is well settled that such "good faith reliance on previously published reports in reputable sources . . . precludes a finding of actual malice as a matter of law." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988); *see also Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir.1978) ("The subjective awareness of probable falsity required by [the Supreme Court] cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied."); *Schultz v. Reader's Digest Ass'n*, 468 F. Supp. 551, 564 (E.D. Mich. 1979) (no evidence of actual malice where author "relied on contemporaneous reports in local and national newspapers and magazines for the statements regarding [plaintiff]"); *see generally* Sack § 5:5.2 ("An author or publisher may rely on previously published accounts in reasonably reliable sources."). In the face of the extensive prior reporting about Pippen's financial woes, with its multiple references to both bankruptcy and the loss of his career earnings, Pippen simply cannot plead in good faith that he can muster the kind of "clear and convincing" evidence that any of the Moving Defendants published their own accounts despite the "high degree of awareness of [their] probable falsity" necessary to state a cognizable claim. *Madison*, 539 F.3d at 657-58; *see, e.g.*, *Indep. Trust Corp.*, 665 F.3d at 944 (absent any suggestion of how plaintiff "might overcome these self-created hurdles if it were to replead," dismissal without leave to amend was proper); *Schatz*, 2012 WL 414264, at *7-8 (affirming dismissal and judgment against public figure where complaint alleged only failure to investigate); *Diaro El Pais, S.L.*, 2008 WL 4833012, at *7 (dismissing claim and closing case where absence of actual malice was apparent "[f]rom the face of the Amended Complaint").[13]

_____

[13] In the brief he has submitted in support of his motion for partial summary judgment, Pippen misapprehends applicable law by citing the Seventh Circuit's decision in *Smock v. Nolan* for the proposition that "'failure to properly investigate the truth of the matter'" establishes sufficient evidence of "reckless disregard" to ground a finding of liability in this case. Pl. Mem. at 5 (citing 361 F.3d 367, 372 (7th Cir. 2004)). For one thing, in *Smock*, the Court of Appeals did not address the First Amendment-based "actual malice" standard – the case involved only a common law claim of conditional privilege and the standard for overcoming it. 361 F.3d at 372. For another, the language that Pippen purports to quote from the case is *nowhere to be found* in the Court's analysis of plaintiff's defamation claim. In fact, the Court *affirmed* the trial judge's dismissal of that claim precisely because, even in the common law

### III. COUNT I SHOULD BE DISMISSED AS AN IMPERMISSIBLE END-RUN AROUND FIRST AMENDMENT PROTECTIONS

Count I of the Complaint asserts a claim for negligence that relies on the exact same facts as the defamation claim asserted in Count III, and alleges only damages to Pippen's "reputation and privacy," which injuries the Complaint attributes to the defendants' "defamatory statements." Compl. ¶¶ 28-31, 34-36. The Court must therefore dismiss Pippen's negligence claim as a transparent attempt to circumvent the actual malice standard applicable to these news reports about a public figure.

It is well settled that a plaintiff may not make an end-run around the protections afforded by the First Amendment by relabeling a defamation claim as some other tort. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988) (First Amendment barred public figure's claim for intentional infliction of emotional distress absent proof that challenged statement was false and was made with actual malice); *Tierney v. Vahle*, 304 F.3d 734, 743 (7th Cir. 2002) (affirming dismissal of conspiracy claim by limited-purpose public figure that alleged that defendants conspired to draft and publish defamatory statements; it would be "nonsensical" to impose liability for publication under a relabeled tort when each defendant would have a good First Amendment defense if sued for defamation). This rule applies equally to all torts involving the publication of allegedly false statements about public figures. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d. 381, 402-03, 882 N.E.2d 1011, 1024 (2008) (affirming dismissal of common law and statutory claims where allegedly defamatory language was not actionable under the First Amendment); *see also, e.g.*, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522-23 (4th Cir. 1999) (plaintiff cannot recover "defamation-type damages under non-reputation tort claims, without satisfying the stricter (First Amendment) standards of a defamation claim . . . such an end-run around First Amendment strictures is foreclosed by *Hustler*"); Sack, § 12:1.2 ("Concerned that constitutional principles not be evaded simply by the

---

context, "reckless disregard" requires "evidence that [defendant] has serious doubts about the accuracy" of the reported fact and, like Pippen, the plaintiff in *Smock* could adduce no such evidence. *Id.*

relabeling of claims, courts have repeatedly held that constitutional standards applicable to defamation apply where the gravamen of a claim is false, harmful speech").

Courts across the country routinely dismiss negligence claims that seek to circumvent First Amendment protections in this manner. *See, e.g.*, *Dongguk Univ. v. Yale Univ.*, No. 08-cv-0441 (TLM), 2012 WL 441250, at *12 (D. Conn. Feb. 10, 2012) (granting summary judgment on negligence claim arising from purportedly false statements and finding that "[a] public figure cannot circumvent the strict 'actual malice' standard imposed by the First Amendment by calling his claim for defamation by a different name"); *Weber v. Multimedia Entm't, Inc.*, No. 97 Civ. 0682 (JGK), 2000 WL 526726, at *12 (S.D.N.Y. May 2, 2000) (dismissing negligence claims arising from the content and publication of allegedly defamatory television program and finding the claims to be a "transparent and impermissible attempt to evade" New York defamation law); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 825 (S.D. Tex. 2005) (dismissing professional negligence claim implicating First Amendment protections for failure to plead actual malice).[14] Because Pippen is a public figure and all of his claims are premised on the publication of allegedly false statements, he must plead actual malice. He has

---

[14] *See also Morgenstern v. Fox Television Stations*, No. 08-0562, 2008 WL 4792503, at *12 (E.D. Pa. Oct. 31, 2008) (dismissing negligence claim pleaded to avoid hurdles created by the defamation standard); *Container Mfg. Inc. v. CIBA-Geigy Corp*, 870 F. Supp. 1225, 1235-36 (D.N.J. 1994) (dismissing negligence claim as an attempt to impermissibly circumvent the law of defamation); *EEE ZZZ Lay Drain Co. v. Lakeland Ledger Publ'g Corp.*, No. 1:99CV145-T, 2000 WL 33422618, at *4 (W.D.N.C. Feb. 8, 2000) (dismissing negligence claim interposed as a fall-back position to the more exacting law surrounding defamation); *Hamilton v. Detroit News, Inc.*, No. 278989, 2008 WL 3979477, at *3 n.2 (Mich. App. Aug. 26, 2008) (dismissing negligence and false-light invasion of privacy claims to prevent plaintiff from circumventing First Amendment limitations by recasting a defamation claim as a different tort); *Newcombe v. Adolf Coors Co.*, 157 F. 3d 686, 695 (9th Cir. 1998) (affirming dismissal of negligent publication claim deemed essentially the same as a claim for defamation because constitutional principles regarding those standards cannot be circumvented by artful pleading); *Mireles v. Infogroup/Opinion Research Corp.*, No. 3:11-cv-00503-RCJ-VPC, 2012 WL 78183, at * 5 (D. Nev. Jan. 10, 2012) (granting motion to dismiss negligence claim where plaintiff attempted to circumvent the standards of a defamation by re-characterizing an alleged statement about him as negligence); *Rodriguez v. ECRI Shared Servs.*, 984 F. Supp. 1363, 1368 (D. Kan. 1997) (dismissing negligence claims pleaded in an effort to circumvent the more stringent requirements of defamation).

failed to do so. For the reasons set forth in Section II, above, this failure dooms Count I as a matter of law, and the Court should therefore dismiss it with prejudice.

## IV. PIPPEN'S FALSE LIGHT CLAIM FAILS AS A MATTER OF LAW

### A. Pippen Fails to Plead Actual Malice as Required of All False Light Plaintiffs Under Illinois Law

In Count II, Pippen asserts a claim for false light invasion of privacy. An indispensable element of a false light claim under Illinois common law is that the defendant made the statement at issue with actual malice. *Raveling v. HarperCollins Publishers Inc.*, No. 04-2963, 2005 WL 900232, at *3 (7th Cir. Mar. 4, 2005); *Krieger v. Adler, Kaplan & Begy*, No. 94 C 7809, 1996 WL 6540, at *10 (N.D. Ill. Jan. 5, 1996); *see also Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 419-23, 534 N.E.2d 987, 990-92 (1989).

Count II fails to state a false light claim because, as set forth in Section II, above, Pippen does not, and cannot plausibly, allege that the defendants acted with actual malice. Instead, the Complaint merely characterizes defendants' behavior as "sloppy" and suggests that they were capable of verifying whether Pippen had filed a bankruptcy petition. Compl. ¶ 27; *see also id.* ¶ 32 (making bare allegation of "reckless conduct" by defendants). Such allegations are insufficient, as a matter of law, to sustain Pippen's obligation to plead the element of actual malice for his false light claim.

### B. Pippen Fails to Plead Special Damages as Required to Sustain his False Light Claim Under Illinois Law

In addition, Pippen premises his claim for false light invasion of privacy on the exact same facts as his claim for defamation *per se*: that the Defendants placed him in a false light by publishing the purportedly false statement that he was bankrupt. *See* Compl. ¶¶ 37-43. However, as discussed in Section I, above, and in defendants' supplemental memoranda of law, defendants' challenged statements are not, as a matter of law, defamatory *per se*. Illinois law does not permit a plaintiff to circumvent the pleading restrictions of defamation law through the artifice of placing a false light label on a claim based on the publication of allegedly false

27

statements. Thus, where a false light claim is based on a publication that is not defamatory *per se*, the false light claim fails unless the plaintiff alleges special damages with particularity. *Maremont v. Susan Fredman Design Group, Ltd.*, 772 F. Supp. 2d 967, 973 (N.D. Ill. 2011) (dismissing false light claim where plaintiff failed to plead actual malice or special damages); *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 736, 554 N.E.2d 988, 994 (1st Dist. 1990); *accord*, *Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 139, 861 N.E.2d 1117, 1130-31 (1st Dist. 2007); *see also* FED. R. CIV. P. 9(g).

The Complaint alleges only that that the statements at issue injured Pippen's reputation and caused him emotional distress and mental pain. *See* Compl. ¶¶ 29-30. These allegations are insufficient to satisfy a plaintiff's burden to plead special damages with particularity. *Lott*, 556 F.3d at 570 (allegations of reputational harm insufficient under Fed. R. Civ. P. 9(g)); *Salamone*, 347 Ill. App. 3d at 843-44, 807 N.E.2d at 1092-93 (allegation of harm to reputation and more detailed allegations of emotional distress, including sleeplessness, depression and weight loss, were insufficient); *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416-17, 667 N.E.2d 1296, 1303-04 (1996) (allegation that plaintiff suffered "'great mental pain and anguish and incurred great expense for the treatment thereof'" was insufficient) (citation omitted).

The requirement that special damages be pled with particularity means that the plaintiff must allege facts which, if proven, would establish that he suffered concrete, pecuniary harm. *Maag v. Ill. Coal. for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 853, 858 N.E.2d 967, 975 (5th Dist. 2006). The Complaint's conclusory allegation that Pippen has experienced a decline in offers for personal appearances and endorsements fails to satisfy this exacting standard. Compl. ¶ 31. Indeed, courts routinely dismiss claims requiring special damages that are based on just such unsupported allegations of lost income or business opportunities. *See, e.g.*, *Van Vliet v. Cole Taylor Bank*, No. 10 CV 3221, 2011 WL 148059, at *7 (N.D. Ill. Jan. 18, 2011) (allegation that plaintiff lost job and her only source of income insufficient); *Anderson*, 172 Ill. 2d at 416-17, 667 N.E.2d at 1303-04 (allegations that plaintiff "'has been damaged monetarily by losing gainful employment and wages'" insufficient) (citation omitted); *Salamone*,

347 Ill. App. 3d at 843-44, 807 N.E.2d at 1092-93 (allegation of loss of business after publication insufficient); *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d. 388, 395, 652 N.E.2d 1077, 1082-83 (1995) (allegation of loss of patients insufficient).  Similarly, in this case, the Complaint's failure to allege special damages with particularity requires that Pippen's false light claim be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Moving Defendants respectfully request that to the Court dismiss the Amended Complaint pursuant to Rule 12(b)(6) with prejudice.

March 16, 2012

NBCUNIVERSAL MEDIA, LLC

By: /s/ David P. Sanders (w/ permission)
    David P. Sanders
    JENNER & BLOCK LLP
    353 North Clark St.
    Chicago, Illinois 60654
    (312) 222-9350

MINT SOFTWARE, INC.

By: /s/ Rodger R. Cole (w/ permission)
    Rodger R. Cole (pro hac vice)
    Songmee L. Connolly (pro hac vice)

    Sean S. Wikner (pro hac vice)
    FENWICK & WEST LLP
    801 California Street
    Mountain View, California 94041
    (650) 988-8500

    Steven P. Mandell
    Steven L. Barren
    MANDELL MENKES, LLC
    One N. Franklin Street
    Chicago, Illinois 60606
    (312) 251-1000

CBS INTERACTIVE INC.

By: /s/ Brian A. Sher
    Brian A. Sher
    Jena M. Valdetero
    BRYAN CAVE LLP
    161 North Clark Street, Suite 4300
    Chicago, Illinois 60601
    (312) 602-5000

    Lee Levine
    Chad R. Bowman
    LEVINE SULLIVAN KOCH &
        SCHULZ, LLP
    1899 L Street, N.W., Suite 200
    Washington, D.C. 20036
    (202) 508-1100

INVESTING ANSWERS, INC.

By: /s/ Ryan B. Jacobson (w/ permission)
    Ryan B. Jacobson
    SMITH AMUDSEN LLC
    150 North Michigan Avenue
    Chicago, Illinois 60601
    (312) 894-3252

EVOLVE MEDIA CORPORATION

By: /s/ Brian A. Sher
    Brian A. Sher
    Jena M. Valdetero
    BRYAN CAVE LLP
    161 North Clark Street, Suite 4300
    Chicago, Illinois 60601
    (312) 602-5000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was served on this 16th day of March, 2012, via this Court's ECF system to all counsel of record.


By: <u>/s/ Brian A. Sher</u>