UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTTIE PIPPEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 11-8834** |
| | ) | |
| NBC UNIVERSAL MEDIA LLC, CBS | ) | |
| INTERACTIVE INC., MINT SOFTWARE INC. | ) | **Honorable Sharon Coleman** |
| wholly owned subsidiary of INTUIT INC., EVOLVE | ) | **Magistrate Judge Young Kim** |
| MEDIA CORPORATION, INVESTING ANSWERS | ) | |
| INC., ARIZONA STATE UNIVERSITY, | ) | |
| UNIVERSITY OF TAMPA, INC., ONE MONEY | ) | |
| DESIGN, and SPORTS REPORT 360 | ) | |
| | ) | |
| **Defendants,** | ) | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTIONS TO DISMISS**

i

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………. 1

12(b)(6) STANDARD……………………………………………………….......  3

   I.   NO INNOCENT CONSTRUCTIO HERE 2……………………………  3

   II.  WE HAVE SLANDER *PER SE* HERE…………………………………  4

   III. WE HAVE NO "PUBLIC FIGURE" HERE FOR
          DEFAMATION PURPOSES………………………………………..  6

   IV. WE HAVE DEFAMATION AND FALSE LIGHT
          AS TWO VIABLE CAUSES OF ACTION…………………………  7

CONCLUSION …………………………………………………………………. 9

## TABLE OF CASES

*Airborne Beepers & Video Inc. v. AT & T mobility, LLC*,
    2207 WL 2406859 (7th Cir., 2007)……………………………………….. 3

*Becker v. Zeller*,
    292 Ill.App.3d at 127, 684 N.E.2d at 1387……………………………… 4,5

*Bell Atlantic Corp v. Twombly*,
    550 U.S. 544, 555 (2007)…………………………………………… 3

*Bryson v. News America*,
    174 Ill. 2d 77 (1996)……………………………………………… 2,3,4

*Dubinsky v. UAL Master Council*,
    303 Ill.App.3d 317 (1st Dist. 1999)……………………………………. 9

*Gertz v. Welsh*,
    418 U.S. 323 (1974)………………………………………………… 6

*Giant Screen Sports et al v. Canadian Imperial Bank of Commerce*,
    553 F.3d 527 (2009)………………………………………………… 2,3

*Green v. Rogers,*
    234 Ill.2d 478 917 N.E.2d (2009)……………………………………….. 4

*Imperial Apparel, Ltd. v. Cosmo's Design Direct, Inc.*
    367 Ill.App. 3d, 853 N.E.2d 770 (2006)…………………………………. 5,6

*Kuwik v. Starmark*,
    156 Ill.2 16 (1993)………………………………………………….. 7

*Lovgren v. Citizens First National Bank of Princeton*,
    126 Ill.2d 411, 128 Ill. Dec. 542, 534 N.E. 2d (1989)…………………….. 8,9

*Muzkowski v. Paramount Pictures, Corp.*
    322 F.3d 918 (7th Cir. 2003)……………………………………….. 8

*St. John's United Church of Christ v. City of Chicago*,
    502 F.3d 616, 625 (7th Cir. 2007)…………………………………..... 3

*Theo Bell v. The Associated Press*,
    584 F.Supp. 128 (1984)………………………………………….. 6

*Tuite,*
    310 Ill.Dec. 303…………………………………………………... 2

*Windsor Lake, Inc. v. WROK*,
    94 Ill.App.2d 403 (1968)……………………………………………… 4,5,6

*Yashon v. Aetna Life & Casualty,*
    75AP-199 (Ohio Ct App. 12/9/75)………………………………….. 5

**INTRODUCTION**

Defendants falsely stated that Plaintiff Scottie Pippen ("Scottie") had declared

"bankruptcy". This constitutes libel per se under Illinois law. Yet, in a 220 page opus,[1] moving

Defendants have attempted to confuse this court with a smoke screen that must be vanished.

Defendants exhibit remarkable chutzpah to argue, first, that their falsely stating Scottie was in

"bankruptcy" is not defamatory, and second, if it is defamatory, then the term must be

"innocently construed". Defendants' arguments stand the law of defamation on its head.

As to defamation *per se*, the offending word in this case is "bankruptcy". It is not

"financial woes" (Defendants' memo page 2) or "extraordinary investment losses" (Defendants'

memo page 5) or "pleading poverty" (Defendants' memo at 7). There is no "innocent

construction" here Defendants, no matter how smartly you may dance!

Defendants, you have the audacity to pooh-pooh Scottie's life-work and your damage to

it when you stated in your dismissal memo at page 13:

> "At most, such a statement suggests only that Pippen was unable to pay
> creditors and sought the protection of the bankruptcy laws. . ."

But you're in the 7th[th] Circuit which has said:

> "…The innocent construction rule 'requires courts to consider a written or oral
> statement in context, giving the words, and their implications, their natural and
> obvious meaning.
> . . .
> Illinois courts emphasize that the interpretation must be *reasonable*.
> . . .
> In considering allegedly defamatory statements under the **innocent
> construction** rule, courts must interpret the words 'as they appeared to have been
> used and according to the idea they intended to convey to the reasonable reader.'

---

[1] This number of pages constitutes 45 pages of text and 175 pages of exhibits, a number for
which leave was not obtained and appears to violate L.R. 7.1, but who's counting?

*Bryson,* 220 Ill.Dec. 195.  The rule 'does not require courts to strain to find an unnatural **innocent** meaning for a statement when a defamatory meaning is far more reasonable.' …It also does not require courts 'to espouse a naïveté' unwarranted under the circumstances.'  *Id.*  Thus, 'when a defamatory meaning was clearly intended and conveyed, [Illinois courts] will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them nonlibellous under the **innocent construction** rule'.
. . .
In making this determination, the context of the statements is critical in determining their meaning..
. . .
Illinois law rejects attempts to imagine **innocent** explanations of plainly defamatory statements. *Tuite,* 310 Ill.Dec. 303
. . .
The word ["Default"] alone triggers notions of collection and **bankruptcy proceedings**.
. . .
To the reasonable reader, the statements, taken as a whole, convey the untrue imputation that Giant Screen is an intentionally dishonest business entity, which purposely disregards its financial contracts." (*Giant Screen Sports et al. v. Canadian Imperial Bank of Commerce,* 553 F.3d 527 (2009) (emphasis added)

Defendants, your speculation simply misses the mark.  A *per se* violation is one which prejudices Scottie in his "trade, profession or business".  *Bryson v. News America*  174  Ill. 2d. 77 (1996). At present his "trade, profession, or business" is to obtain personal contracts for product endorsement and appearances as a Hall of Fame NBA basketball player.  That you have diminished his negotiating capacity in this endeavor is obvious.  His leverage is lost.  He's "bankrupt", say you, so he needs the money.  You have put him in a false light.

As to Scottie's being a  "public figure",  Scottie is likely not a public figure for *defamation* purposes.  He did not inject himself into this controversy over a non-existent "bankruptcy".  But even if he were,  malice here is obvious.  Malice is a conscious disregard for the rights of others.  A mere click of the mouse (4 minutes per Lester Munson) educates even a grade school student that Scottie never filed bankruptcy.

2

## 12(b)(6) STANDARD

When reviewing a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 555 (2007); *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7ᵗʰ Cir. 2007). A complaint should be dismissed only if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 550 U.S. at 570. Moreover, a district court should only dismiss a complaint if "the factual detail…[is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. *St. John's,* 502 f.3d at 625, citing *Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC,* 2207 WL 2406859 at 5 (7ᵗʰ cir. Aug. 24, 2007).

## I.    NO INNOCENT CONSTRUCTION HERE

In Illinois, our Supreme Court has held the innocent construction rule does not apply "simply because allegedly defamatory words are 'capable' of an innocent construction." *Bryson, supra.* In *Bryson,* Defendant had described the Plaintiff as a "slut" and the Court wrote that words cannot be given anything but their "actual and obvious meaning." The term "bankruptcy's" actual and obvious meaning attacks Scottie's net worth, thus affecting his ability to negotiate profitable contracts for endorsement and public appearances. It also affects his role model status. Defendants thus surely prejudice him in his "trade, profession or business", which is based on his exemplary conduct over many years. There is no mystery. Either this statement is true or false. "Innocent construction" does not help Defendants.

Defendants clearly misunderstand the innocent construction rule. *Bryson* ruled, as we noted did the 7ᵗʰ Circuit in *Giant Screen, supra,* that courts "will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense in order to hold them

3

non-libelous under the innocent construction rule".  More recently, in *Green v. Rogers,* 234

Ill.2d 478, 917 N.E.2d 450 (2009), the Illinois Supreme Court determined that the term

*terminated for cause* "…cannot reasonably be construed as having an innocent meaning, as a

matter of law."  Surely "bankruptcy" is much less potentially ambiguous than is the term

"terminated for cause."  Here again, the Illinois Supreme Court has held the innocent

construction rule does not apply simply because allegedly defamatory words are 'capable' of an

innocent construction.  *Bryson* 174 Ill.2d at 93."

For sure, words cannot be given anything but their 'actual and obvious meaning.' *Id.*

"Bankruptcy" is not an ambiguous term.  "Bankruptcy" prejudices Scottie in his "trade,

profession or business."

## II.        WE HAVE SLANDER *PER SE* HERE.

We need just refer this Court to our recently filed Motion for Partial Summary Judgment as

well as Roman Numeral I above.  Both clearly establish that falsely labeling Scottie a "bankrupt"

is defamation *per se.*  But even if "bankruptcy" is not defamatory on its face,[2] Scottie

sufficiently  alleges  special damages which triggers defamation  *per quod.*

Yet defendants appear to argue that special damages were not sufficiently pled. They are

wrong. A specific allegation that a third party has stopped doing business with plaintiff as a

result of defendant's statements is a sufficient allegation of special damages.  See *Becker v.*

*Zeller ,* 292 Ill. App.3d at 127, 684 N.E.2d at 1387.  Likewise, a plaintiff sufficiently pleads

special damages by explicitly stating  loss of revenue  resulting from the loss of customers due to

defendants' statements.  See,  *Windsor Lake, Inc. v. WROK,* 94 Ill. App. 2d 403, 408-09 (1968).

In *Becker, Id.* the court found that plaintiffs sufficiently alleged special damages where they

---

2 As stated, we believe the 7th Circuit in *Giant Screens Sports* has found it to be *per se.*

claimed defendant's defamatory statement to a close friend of a third party caused that party to

stop doing business with plaintiffs. *Becker¸* 292 Ill.App. 3d at 127-28, 684 N.E.2d at 1387.

Furthermore, in *Windsor Lake,* the court found that plaintiff had sufficiently pled special

damages where it alleged that defendant's broadcasted statements as to its bench being unclean

and unsanitary resulted in a profit loss due to reduction of gage attendance and concession

receipts. (See also *Yashon v. Aetna Life & Casualty,* No. 75AP-199 (Ohio Ct. App. December 9,

1975), an Ohio case wherein, in an unpublished opinion, the court found that the loss of business

through referrals as a result of defendant's defamatory letter constituted to a sufficient allegation

of special damages).

The analysis in *Imperial Apparel, Ltd. v. Cosmo's Design Direct, Inc.,* 367 Ill. App. 3d 48,

853 N.E.2d 770 (2006), *rev'd on other grounds,* 227 Ill. 2d 381, 882 N.E.2d 1011 (2008), is

highly instructive. In that case, the defendant published defamatory material about plaintiff's

business in a newspaper. The court found that the plaintiff sufficiently alleged special damages

by stating in its complaint that its sales decreased from the month preceding defendant's

defamatory statement and as compared to the same period in the prior year. *Imperial Apparel,*

367 Ill.App.3d at 59, 853 N.E.2d at 780-81. In doing so, the court stated that "[w]here there has

been wide dissemination of disparaging material to persons unknown and the plaintiff is in the

business of offering goods for sale to the general public, it is obviously impossible for such a

plaintiff to specifically identify the potential customers who, as a result of the defamatory

material, did not purchase its goods. *Id.* "While we have no quarrel with the proposition that a

plaintiff in a *per quod* action must plead special damages with specificity, we nevertheless

believe that a plaintiff is only obligated to be as specific as it is reasonable to require." *Id.*

In this case, Scottie alleged (¶s 27-32 of the Amended Complaint) that as a result of defendants' statements, he suffered a precipitous drop in the number of contract offers and the amount offered causing his income to drop. In fact, similarly to plaintiff in *Windsor Lake*, Scottie specifically alleged a decrease in his income after defendants' statement was made. Further, as in *Imperial,* defendants in this case made defamatory statements which they disseminated worldwide. Scottie has alleged that as a result, his income declined as compared to the years before defendants made their statements. Discovery will demonstrate the number of worldwide hits, which we all know, can be multiplied exponentially by texting, emailing, and just plain talking!

### III.     WE HAVE NO "PUBLIC FIGURE" HERE FOR DEFAMATION PURPOSES.

*Theo Bell v. The Associated Press,* 584 F.Supp. 128 (1984) instructs:

> "For purposes of the law of defamation, there are two classes of public figures (1) 'general purpose' public figures, that is, those who have attained such a persuasive power and influence or such fame or notoriety that they may be classified as public figures in all situations, and (2) 'limited purpose' public figures, that is, those who 'voluntarily inject [themselves or are] drawn into a particular public controversy."

As we stated in our opening comments, Scottie is not likely a "public figure" for defamation purposes. Certainly he is not a "limited purpose" public figure as he did not inject himself into the published lie of his having filed bankruptcy. At best, Defendants' argument may have some credibility that Scottie is a "general purpose" public figure.

*Gertz v. Welch*, 418 U.S. 323 (1974) teaches us, "those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classified as public figures" and therefore may only recover upon the proof that the falsehood was made with knowledge of its falsity or with reckless disregard of the truth. In other words, such a plaintiff must establish malice.

6

Proof of malice is simple here. As the Illinois Supreme Court stated in *Kuwik v. Starmark,* 156 Ill. 2d 16 (1993) whether the conduct of a Defendant in a defamation action constitutes "actual malice" that is, a "reckless disregard" for the Plaintiff's rights, is a question of fact for the trier of fact. The suggestion by defendants that they may be only guilty of a mere "failure to investigate" and had a "good faith reliance on previously published reports" is lame. No reasonable trier of fact could deny that defendants acted in "reckless disregard" of Scottie's rights given the ease with which information as to a filed bankruptcy can be obtained. It took journalist Lester Munson 4 minutes.

Also lame is defendant's theory that Scottie delayed in attempting to dispel the false bankruptcy reports by defendants. This lawsuit was filed within months of publication of the falsehoods by defendants. In any event, a 12(b)(6) motion cannot dispose of these issues. We believe we will have no problem persuading the trier of fact that the ease with which one, *anyone,* could determine if Scottie were truly a bankrupt and the failure to do so constitutes actual malice.

## IV. WE HAVE DEFAMATION AND FALSE LIGHT AS TWO VIABLE CAUSES OF ACTION.

Defendants dismissal motion at 21 argues that Scottie's Amended Complaint contains only "an unadorned and conclusory allegation that 'Defendant's [sic] unprivileged defamation…were published with actual malice and/or utter disregard for Scottie's rights and interests'" This is *jabberwocky*. The Amended Complaint's paragraphs 27 – 32 states:

> 27. But, saliently, the Defendants' sloppy conduct, in light of the previous description of Scottie, was especially egregious in view of the fact that a mere click of the mouse for bankruptcies in Scottie's home State would have illustrated he ***never*** filed a bankruptcy.
> 28. Scottie has had to vigorously deny and refute the above defamatory statements to business associates, colleagues, family and friends despite his outstanding charitable involvement and appearances.

7

29.  As a proximate result of the above-delineated false defamatory statements made by Defendants, Scottie's reputation has been permanently damaged and he has been forever deprived of the impeccable personal and professional reputation which he worked for years to create and maintain, and which he deserves.
30.  As a proximate result of the above delineated false defamatory statements made by Defendants, Plaintiff has suffered emotional distress and mental pain and suffering, and will continue to do so in the future.
31.  As a proximate result of the above delineated false defamatory statements made by Defendants, Plaintiff has suffered substantial monetary damages because since these false defamatory statements have been circulated worldwide, Scottie's offers for personal appearances and endorsements have dwindled to a fraction of what they had been previously: all of which will be established at the trial of this matter.
32.  Scottie is entitled to punitive damages in order to punish and deter Defendants from such reckless conduct."

In *Muzkowski v. Paramount Pictures, Corp.*, 322 F.3d 918 (7th Cir 2003), the Seventh

Circuit, applying Illinois law, permitted a baseball coach to proceed with his libel and false light

claims against the defendant film producers.  Defendants portrayed plaintiff as a thief, and as an

unlicensed securities broker.  These statements were deemed defamatory per se, said the 7th

Circuit, noting also that the tort of false light tracks our assessment of defamation law.  Surely

Scottie's  evidence of Defendants' false and malicious bankruptcy accusations rise to a level that

exceeds what was alleged in *Muzkowski*.

In *Lovgren v. Citizens First National Bank of Princeton*, 126 Ill. 2d 411, 128 Ill. Dec. 542,

534 N.E.2d 987 (1989), the Illinois Supreme Court set forth the three elements necessary to state

a cause of action for false light invasion of privacy. First, the allegations in the complaint must

show that the plaintiff was placed in a false light before the public as a result of the defendant's

actions.  Second, the statement must allow a trier of fact to decide that the false light in which

the plaintiff was placed would be highly offensive to a reasonable person.  Third, the plaintiff

must allege and prove that the defendant acted with actual malice, that is, with knowledge that

8

the statements were false or with reckless disregard for whether the statements were true or false. *Lovegren*, 126 Ill. 2d at 419-23.

In cases where both defamation and false light invasion of privacy claims might exist, the plaintiff may proceed under either theory, or both, but only one recovery for each instance of publicity is possible. *Dubinsky v. UAL Master Council*, 303 Ill. App. 3d 317 (1st Dist. 1999). The claim of false light invasion of privacy protects one's interest in being let alone from false publicity. The Illinois Supreme Court has adopted section 652E of the Restatement (Second) of Torts, stating, "our study of the Restatement approach and Prosser's commentary on false-light privacy reveals that the heart of this tort lies in the publicity, rather than in the invasion into the plaintiff's physical solitude or affairs upon which the tort of invasion into seclusion is based.'" *Dubinsky*, 303 Ill. App. 3d at 331, quoting *Lovgren*, 126 Ill. 2d at 418-19. In false light cases, a court need not distinguish between private and public figures, and a plaintiff's involvement in public matters does not automatically give the defendant the right to make or publish statements depicting the plaintiff in a false light. *Dubinsky*, 303 Ill. App. 3d at 331.

## CONCLUSION

Enough. Falsely attributing "bankruptcy" is libel per se, under Illinois law. There is nothing ambiguous about the accusation of "bankruptcy". It was obviously newsworthy to Defendants because it was damaging. There is no "innocent construction" safe harbor for such an intended, unambiguous, (and false) *per se* slur. We ask that Defendants' 12(b)(6) motions be denied.

Respectfully submitted,

By: __Arthur S. Gold/s/_____
One of Plaintiff's attorneys

9

Arthur S. Gold
GOLD & COULSON
11 S. LaSalle Street
Suite 2402
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

George Spellmire
Jeffrey Katz
Spellmire Law Firm
233 S. Wacker Drive, Suite 2100
Chicago, IL 60606
(312) 258-9400

C:\WP51\ASG\DAVIS/RESPONSE AND OPP TO MTD.